**In re James Hollis JOHNSON aka Jim Johnson, Debtor.**

**Bankruptcy No. 86 B 0829 G.**

United States Bankruptcy Court, D. Colorado.

July 31, 1986.

Richard K. Blundell, Greeley, Colo., for debtor.

Randall F. Komisarek, Denver, Colo., for Cent. Bank of Denver.

### MEMORANDUM OPINION AND ORDER

CHARLES E. MATHESON, Bankruptcy Judge.

This matter came on for hearing before the Court in this Chapter 13 proceeding on the Debtor's Motion to Confirm a Chapter 13 Plan. The Central Bank of Denver ("Bank"), a secured creditor, objected to the plan which brought the matter on for hearing.

No evidence was presented at the hearing. The key facts were stipulated to by the parties. The Bank is a secured creditor which is owed approximately $4,500.00. The obligation to the Bank is secured by a

bearance to ½ of 1% of the principal amount of the loan or forebearance.

1982 Dodge pickup. While the Bank alleged in its objection to confirmation that the value of the vehicle is in excess of $3,600.00, the parties, for purposes of the hearing, stipulated that the vehicle has a value of $2,500.00 and that the Bank has a secured claim in that amount.

The Debtor's plan is a five year plan. Under the plan the Debtor is to pay the Bank the value of its collateral; i.e., $2,500.00, capitalized at 12% over the period of the plan. The Debtor will pay into the plan, $203.00 per month. However, the Debtor has administrative and priority claims under the plan slightly in excess of $8,700.00. Thus there would be no payments to the Bank on its claim for three and one-half (3½) years during which time the Debtor proposes to continue to use the vehicle in his construction business. The Debtor acknowledged that depreciation will occur and, by the time the Bank begins to receive payments under the plan, the value of its collateral will be nominal.

The Debtor urges that confirmation of the plan is proper under 11 U.S.C. § 1325(a)(5). That section provides that the Court shall confirm the plan over the objection of the secured party if:

> (5) with respect to each allowed secured claim provided for by the plan—
>
> . . . .
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . . .

The Debtor, praying for confirmation of the plan, argues that under the plan the Bank will retain its lien on the pickup truck and the Debtor's undertaking to pay the amount of the secured claim, capitalized at 12%, constitutes property having a value of not less than the allowed amount of such claim. The Bank does not dispute that the plan meets the literal language of Section 1325(a)(5)(B) but argues, in essence, that the plan cannot be confirmed unless the Bank's security interest is adequately protected from depletion by way of depreciation of the vehicle.

■ There are two aspects to a secured claim. The first aspect, which is the one commonly recognized, is the quantitative aspect. This is the dollar amount of the claim which is recognized to constitute a secured claim. The quantitative amount of the claim is determined as provided under 11 U.S.C. § 506(a) and is equal to "the value of such creditor's interest in the estate's interest in" the collateral. The quantitative value of the Bank's claim in the amount of $2,500.00 has been stipulated to by the parties.

The creditor, in order for the plan to be confirmed, must be paid or receive the quantitative value of the secured claim. It can be paid in cash at the time of confirmation or it can be paid on a deferred basis. However, if it is to be paid on a deferred basis, the Debtor must pay interest, or capitalize the principal amount of the claim, at an appropriate rate so that the present value of the future income stream will equal the quantitative amount of the claim. In the present case the parties agree that the 12% capitalization rate is sufficient so that the present value of the deferred income stream equals the quantitative amount of the claim; i.e., $2,500.00.

There is a second aspect to a secured claim other than the quantitative aspect, and that is the qualitative aspect of the claim. The qualitative aspect speaks to the relative degree of assurance that the debt will be paid, and it is equally as important to the creditor as the quantitative aspect. It is a property right protected by the Fifth Amendment and a Chapter 13 plan must bear "constitutional and statutory muster as to the vested property rights of secured creditors." *Matter of Anderson,* 6 B.R. 601, 609 (Bankr.S.D.Ohio 1980).

The qualitative aspect of a secured creditor's claim and the necessity that it be protected under a plan of reorganization has long been recognized by the United States Supreme Court. In *Louisville Joint Stock Land Bank v. Radford,* 295 U.S.

555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), the Supreme Court struck down the Frazier-Lemke Act as being in violation of the Fifth Amendment to the United States Constitution in large part because, under that Act, the secured lender would not have been protected against future depreciation or waste of its collateral. In reaching its decision the Court relied, as well, on its opinion in the case of *W.B. Worthen Co. v. Kavanaugh*, 295 U.S. 56, 55 S.Ct. 555 79 L.Ed. 1298 (1935). In the *Worthen* case the Supreme Court held unconstitutional a state moritorium law because: "With studied indifference to the interests of the mortgagee or to his appropriate protection they have taken from the mortgage the quality of an acceptable investment for a rational investor." *Ibid*, at 557. Thus, the Supreme Court has squarely focused on the necessity of protecting the "quality" of the secured lender's investment.

It is clear, at least in this district, that Chapter 13 cases are reorganization cases. *In re Pittman*, 8 B.R. 299 (D.Colo.1981). It is the general rule in reorganization cases that the plan of reorganization must be "fair and equitable". *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1 84 L.Ed. 110 (1939), *Consolidated Rock Products Co. v. DuBois*, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Under the law of those cases the reorganization plan must respect not just the relative priority of the interest of the creditors and the debtor but the absolute priority, and the plan must make full compensatory provision "for the entire bundle of rights which the creditors surrender." *Consolidated Rock Products Co., supra.* at 686. However, the provisions of Chapter 13 of the Bankruptcy Code, unlike the provisions of Section 1129 of Chapter 11, do not expressly incorporate the "fair and equitable" language and, perhaps, there is no constitutional requirement to engraft the absolute priority rule on a Chapter 13 plan. See, *Securities and Exchange Commission v. American Trailer Rental Co.*, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965). Nevertheless, a secured creditor in a Chapter 13 case is protected from the time of

the filing of the case until confirmation of the plan not only as to the quantitative aspects of his claim, but also as to the qualitative aspects by reason of the application and workings of 11 U.S.C. § 361 and § 362.

Section 362 of the Code imposes a stay on the secured creditor which impairs the creditor's right to proceed to foreclose and realize on the value of his collateral. Section 362(d) of the Bankruptcy Code provides that the automatic stay can be terminated for, among other things, "the lack of adequate protection of an interest in property." Code Section 361 defines "adequate protection." It specifies that adequate protection may be provided in a variety of ways including requiring the debtor to make periodic cash payments or otherwise insuring the realization by the secured party of the "indubitable equivalent" of such party's interest in the collateral. 11 U.S.C. § 361(3).

The legislative history relating to 11 U.S.C. § 361 states in part at page 339:

The first method of adequate protection specified is periodic cash payments by the estate, to the extent of a decrease in value of the opposing entity's interest in the property involved. This provision is derived from *In re Yale Express, Inc.*, 384 F.2d 990 (2nd Cir.1967) (though in that case it is not clear whether the payments required were adequate to compensate the secured creditors for their loss). The use of periodic payments may be appropriate, where, for example, the property in question is depreciating at a relatively fixed rate. The periodic payments would be to compensate for the depreciation. H.R. # 95-595, accompanying H.R. 8200, 95th Congress, 1st Session (1977), pps. 338-340.

It is important to note that the periodic payment specified under § 361 is to compensate for the depreciation of the underlying collateral as opposed to the capitalization of the secured creditor's quantitative claim at an interest rate sufficient to compensate the secured creditor for the time loss of the use of money during the de-

ferred payment period. These are separate and distinct concepts, although the distinction is sometimes blurred by the courts. See *e.g., Matter of Crocket,* 3 B.R. 365 (Bankr.N.D.Ill.1980).

The "indubitable equivalent" language derives from the case of *In re Murel Holding Corp.,* 75 F.2d 941 (2nd Cir.1935). In that case the court, speaking to the provisions of old 77B, said:

> It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence. *Ibid* p. 942.

In analyzing the impact of the *Murel* case the court, in its decision of *In re American Mariner Industries, Inc.,* 27 B.R. 1004 (9th Cir.Bankr.App.Panel, 1983), rev'd. on other grounds, 734 F.2d 426 (1984) stated:

> *Murel* has been read to provide that the concept of indubitable equivalence requires that consideration be given to the time value of money or interest. However, the case, on its facts, ultimately held that the tender of interest was insufficient; that the indubitable equivalent of the debtor's interest should be of the same quality as his money or the property. Thus, the Court held that despite the time value of money being offered, the debtor's proposal was otherwise so uncertain that the offer of interest was not enough to provide safeguards equivalent to preserving the integrity and availability of the collateral during the extended period of principal payment. *Ibid* at 1008.

While it is clear that Sections 361 and 362 of the Code apply during the pendency of the Chapter 13 case up to the time of confirmation of the plan, thereby affording protection to the secured creditor during that brief interlude, the applicability of those sections postconfirmation is in serious doubt. Some cases have, without in depth inquiry, assumed that Section 362 continues to apply until the payments under the plan are completed. *Matter of Anderson,* 6 B.R. 601 (Bankr.S.D.Ohio 1980); *In re Honaker* 2 C.B.C.2d 208 (Bankr.E.D.Mich.1980). Closer inspection indicates the contrary.

█ We are concerned here with the problem of protecting the secured creditor's interest in the collateral, including the right to foreclose and realize the cash value of the collateral. Section 362 applies to stay such foreclosure during the pendency of the Chapter 13 case, but it ceases to apply at such time as the collateral is no longer property of the estate. 11 U.S.C. § 362(c)(1). Unless the Chapter 13 plan provides otherwise (and the instant plan does not), confirmation of the plan serves to vest all of the property of the estate in the debtor. 11 U.S.C. § 1327(b). While the property may remain subject to the lien of the secured party (11 U.S.C. § 1327(c)), enforcement of the lien is no longer stayed by Section 362, and the "adequate protection" provisions of Section 362(d) are no longer applicable. Instead, at that point in time, the secured creditor's rights and interests are defined strictly by the provisions of the plan.

> An order confirming a Chapter 13 plan is res judicata as to all justiciable issues which were or could have been decided at the confirmation hearing. (citation omitted) Section 1327 precludes a creditor from asserting, after confirmation, any other interest than that provided for it in the confirmed plan. The issues of adequate protection, lack of equity, and necessity for a successful rehabilitation of the Chapter 13 debtor were all res judicata as of the confirmation of the plan. (citation omitted) *In re Evans,* 30 B.R. 530, 531 (9th Cir.Bankr.App.Panel 1983).

See also, *In re Ellis,* 60 B.R. 432 (9th Cir.Bankr.App.Panel 1986) (holding *Evans*

not applicable and granting relief from stay where the plan expressly provided that the collateral would remain property of the estate postconfirmation); *Matter of Brock*, 6 B.R. 105 (Bankr.N.D.Ill.1980); *In re Tucker*, 35 B.R. 35 (Bankr.M.D.Tenn. 1983); *In re Flick*, 14 B.R. 912 (Bankr.E.D. Pa.1981); *In re Moore*, 13 B.R. 914 (Bankr. Ore.1981).

One commentator has suggested that a Chapter 13 plan can be confirmed over the objection of a secured creditor if the literal language of 11 U.S.C. § 1325(a)(5)(B)(i) is met. That reporter concludes that there is no requirement that a Chapter 13 plan provide protection to the holder of an allowed secured claim against future diminution in value of the underlying collateral. 5 *Collier Bankruptcy*, para. 1325.06 at pp. 1325-33 (15th Ed.). The contrary view has been expressed as follows:

> If a Chapter 13 plan fails to adequately protect a secured creditor from diminutions in collateral value by granting him additional security or payments, the plan no longer shields the debtor but arms him with a sword with which the debtor may rehabilitate his financial condition at the secured creditor's expense.
>
> Denying the secured creditor adequate protection of his security interest during the life of the plan is inconsistent with the purpose of the Code to not deprive a secured creditor of the benefit of his bargain. The secured creditor is entitled to money or property to the extent of the value of his claim as of the effective date of the plan. The secured party will receive the value of his original bargain only to the extent that he "is adequately protected in respect to that value over the life of the plan."
>
> ... Clearly, whenever a secured claim is satisfied at a rate slower than the rate of depreciation in value of the underlying collateral, the secured creditor will be deprived of the full value of his claim in the event that the debtor defaults before the plan is completed. The debtor may however, provide adequate protection either by adjusting the payments under the plan so that the unsatisfied claim is

never more than the value of the collateral or by supplying the creditor with additional security. Bowman and Thompson, *Secured Claims Under Section 1325(a)(5)(B): Collateral Valuation, Present Value, and Adequate Protection*, 15 Ind.L.Rev. 569, 586–88 (1982).

The same authors go on to conclude that the secured creditor's claim is both quantitative and qualitative in nature and must be provided for in its entirety, protecting both against depreciation of the collateral and against diminished monetary return due to deferred payments without an adequate interest factor. The cases which have considered the matter are in accord with the conclusions of Messrs. Bowman and Thompson. See *In re Pittman*, supra; *Matter of Anderson*, supra; *In re Lum*, 1 B.R. 186 (Bankr.Tenn., 1979); *Matter of Miller*, 13 B.R. 110, (Bankr.S.D.Ind.1981); *Matter of Begley*, 7 B.R. 108 (Bankr.S.D. Ohio, 1980).

The Debtor's plan in the instant case provides for the quantitative nature of the Bank's claim by capitalizing the amount of the claim at an interest rate acceptable to the parties. The qualitative aspect of the Bank's claim is not dealt with. The Bank will receive no payments for the first three and one half years under the plan. By the time payments to the Bank commence the underlying collateral will have little or no value. Thus, the Bank will have gone from being a fully secured creditor to being virtually a wholly unsecured creditor. In the language of the United States Supreme Court in the *Worthen* case, *supra*, the debtor's treatment of the bank's claim removes "the quality of an acceptable investment for a rational investor." *W.B. Worthen Co. v. Kavanaugh*, supra at 557. In order for the Debtor's plan to be confirmed, it must deal fairly with the Bank's claim and provide the Bank with "adequate protection" of its interest in the collateral, not only as of the date of confirmation, but on an ongoing basis. See *In re Tucker*, *supra*. This the plan does not do, and the plan, therefore, cannot be confirmed.

For the reasons stated the Debtor's motion to confirm his Chapter 13 plan is hereby denied. The Debtor is granted leave to file an amended plan or a motion to covert or dismiss this case within twenty (20) days from the issuance of this order failing which this Chapter 13 case shall be dismissed upon order of this Court.