**In re Eric Maurice COOK, Debtor.**

**In re Bryan HOLLAND and Lisa Holland, Debtors.**

**Bankruptcy Nos. 96–04907, 96–04849.**

United States Bankruptcy Court,
N.D. Florida,
Pensacola Division.

Jan. 29, 1997.

438

Martin Lewis, Pensacola, FL, for Debtor.

David Bailey, Pensacola, FL, for GMAC.

Leigh Hart, Trustee, Tallahassee, FL.

### MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

These two cases under chapter 13 of the Bankruptcy Code came on for confirmation over the objections of General Motors Acceptance Corporation (GMAC), the holder of claims secured by the debtors' automobiles. The dispute in these cases and numerous other cases filed by the attorneys representing these debtors centers on whether fees to the debtors' attorneys to be paid under their respective chapter 13 plans must be paid in full before the secured creditors are paid anything.

### BACKGROUND

Until recently, chapter 13 debtors and creditors holding claims secured by automobiles routinely entered into adequate protection agreements prior to confirmation of the debtors' plans. A typical agreement in a case in which the claim was to be modified by paying the value of the vehicle over the life of the plan at an appropriate interest rate would provide that the debtor would commence making the payments provided for to that creditor prior to confirmation, with those payments being deducted from the pre-confirmation payments to the chapter 13 trustee. Upon confirmation of the plan, the payments would then be made through the trustee.

In these cases (and numerous others), the debtors' attorneys undertake representation without requiring fees to be paid in advance, but instead agree to receive their fees under the plan. The debtors have objected to any pre-confirmation adequate protection payments being made to the secured creditors based on the concerns that if adequate protection payments are made to the secured creditors prior to confirmation, there will not be sufficient funds on hand in the estate at confirmation to pay the attorneys fees in full. When GMAC filed its motions in these two cases for relief from the automatic stay or for adequate protection, debtors' counsel successfully argued that based on the reasoning of *In re Cason,* 190 B.R. 917 (Bankr.N.D.Ala. 1995), any payment of adequate protection to the secured creditor prior to confirmation would violate § 1326(a)(2) of the Bankruptcy Code,[1] which requires the trustee to retain all payments proposed by the plan until the

---

1. 11 U.S.C. §§ 101 et seq. (1996). For administrative convenience, all references to the Bank-   ruptcy Code will be by section and number.

plan is confirmed or confirmation is denied. Counsel argued that as long as the debtors made their plan payments, the creditor was adequately protected. However, § 1326(a)(2) also provides that if the plan is not confirmed, the trustee must return the payments to the debtor. In order to insure that the creditor's interest in the collateral was adequately protected, I ordered that the creditor would be granted a lien on the funds paid to the trustee, to the extent of the monthly depreciation of the automobiles, with such funds to be paid to the creditor in the event of dismissal or conversion of the chapter 13 cases.

When these cases came on for confirmation, debtors' counsel, supported by the trustee, took the position that once the plans are confirmed, the creditor is no longer entitled to adequate protection and that the debtors' attorney's fees must be paid first and in full from the funds on hand, even if the secured creditor has to wait until some time after confirmation before it receives anything at all. GMAC objected, taking the position that it was entitled, at the least, to receive the adequate protection payments representing the depreciation of its security and that post-confirmation, it is entitled to continue to receive payments of at least the continuing depreciation on a monthly basis, even if that meant payment of the debtor's attorneys in deferred payments.

## DISCUSSION

The issues discussed herein, adequate protection, valuation, and confirmation, are applicable to all chapter 13 cases in which debtors retain collateral that is declining in value. Thus, in addition to ruling on the specific issues before the Court in the above-styled cases, I will use this memorandum of opinion as a vehicle to establish and explain a procedure which will clarify the chapter 13 practice in this district.

### I. Adequate Protection

When the issue of adequate protection initially came before the Court upon GMAC's motion for relief from stay, I ruled, in each case, based on the holding in *Cason* that adequate protection payments are payments under a plan pursuant to Section 1326(a)(2),

adequate protection payments made directly to the secured would violate Section 1326(a)(2), and the trustee shall retain all payments made by the debtor until such time as the debtor's plan was confirmed or denied. I granted GMAC adequate protection, in the form of a lien on the proceeds paid to the trustee to the extent of monthly depreciation of the automobiles, to be paid to GMAC upon dismissal or conversion of the case. Upon further reflection, I have determined that my earlier rulings and my reliance upon *Cason* were erroneous for the following reasons.

Upon filing a petition under chapter 13 of the Bankruptcy Code, a debtor is entitled to remain in possession of all property of the estate, pursuant to Section 1306(b). The automobiles in these cases constitute property of the estate for purposes of Section 1306(b). This right to retain possession is limited. Section 363(e) provides:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide *adequate protection* of such interest, ... (emphasis added)

11 U.S.C. 363(e). The Bankruptcy Code does not define adequate protection, but it does provide a non-exclusive list of examples in Section 361. Section 361(1) states that adequate protection may be provided by:

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

11 U.S.C. 361(1).

In summary, section 363(e) authorizes a court to require the trustee to adequately protect creditors whose collateral is declining in value due to its use, sale, or lease. Section 361(1) provides that one form of adequate protection is requiring the trustee to make periodic cash payments to a creditor whose

collateral is being retained pursuant to Section 363(e). Further, Section 1303 grants debtors the power of a trustee under Section 363(e). Thus, the plain language of the Bankruptcy Code dictates that a court may require a chapter 13 debtor to make periodic cash payments to an undersecured creditor to adequately protect the creditor against the depreciation of its collateral which is being retained and used by the debtor.

This determination leads to the related question of when creditors are entitled to receive adequate protection payments. In *Cason*, the court agreed that periodic cash payments are one way to adequately protect a creditor. *In re Cason*, 190 B.R. 917. However, the court required that the payments be made by debtors to the chapter 13 trustee. The court ruled that adequate protection payments are payments under a plan pursuant to Section 1326(a)(2), and may not be distributed to creditors until confirmation. This view does not appear to be widely shared by other courts.

In *In re Ingle*, 91 B.R. 27, 28 (Bankr. E.D.Mich.1988), the court considered whether adequate protection payments constitute payments under a plan pursuant to Section 1326(a)(2), and determined that they did not. The court held that secured creditors are entitled to receive adequate protection payments, consisting of debtors' regular monthly loan payment, prior to confirmation. *Id.* Several other courts, while not expressly considering whether adequate protection payments are payments under a plan, have held that secured creditors are entitled to receive adequate protection payments pre-confirmation to protect them against the decline in value of their collateral. *In re Kennedy*, 177 B.R. 967, 972 (Bankr.S.D.Ala.1995) (finding that "[a]dequate protection prevents loss to secured creditors during a case by requiring debtors to pay secured creditors for depreciation of their collateral prior to confirmation"); *In re Hinckley*, 40 B.R. 679 (Bankr.D.Utah 1984) (requiring the debtor to make adequate protection payment directly to a creditor to protect the creditor against depreciation of an automobile); *In re English*, 20 B.R. 877, 879 (Bankr.E.D.Pa.1982) (finding that the debtor's offer to maintain

current monthly payment to a creditor adequately protects the creditor against depreciation of an automobile); *In re Brickel*, 11 B.R. 353 (Bankr.D.Me.1981) (requiring the debtor to resume monthly payments directly to a creditor, as adequate protection, in order to regain possession of a vehicle); and *In re Brock*, 6 B.R. 105, 107 (Bankr.N.D.Ill. 1980) (providing that under Section 361(1), adequate protection may be provided by periodic pre-confirmation cash payments from the trustee to the creditor). None of these cases state that adequate protection payments must be made to the trustee, nor do they find that adequate protection payments constitute payments under a plan, pursuant to section 1326(a)(2), which must be retained by the trustee until confirmation. To the contrary, in each of these cases the courts require either the debtor or the trustee to make cash payments directly to the secured creditor prior to confirmation.

■ Thus, based on the plain language of the Bankruptcy Code and the cases cited above, I hold that adequate protection payments do not constitute payments under a plan pursuant to Section 1326(a)(2), adequate protection payments can be made by debtors or the chapter 13 trustee to secured creditors prior to confirmation, and debtors may deduct the amount of adequate protection payments from their payments to the trustee.

■ Two related issues are the time when the right to adequate protection begins and the methodology for determining the appropriate amount of adequate protection. Some courts have stated that the right to adequate protection begins upon the filing of the petition or the filing of a proof of claim. However, the majority rule, and the rule used by this Court, is that if adequate protection is granted, it is granted prospectively from the date a motion for relief from stay or a motion for adequate protection is filed. *In re Kennedy*, 177 B.R. at 973. As for methodology, since the most frequently used and most authoritative source of values for used automobiles is the N.A.D.A. Blue Book, that source can also be used, at least as a starting point, in determining a rate of depreciation for automobiles. In determining the amount of adequate protection a creditor is entitled

to receive on its secured claim, absent more reliable evidence, the average rate of decline in the Blue Book value of the particular automobile over a three (3) month period immediately preceding the date of the request for adequate protection should be used. The value to be used should be the average between the retail and wholesale (trade-in) values listed for a comparably equipped automobile with comparable mileage. *In re Rowland,* 166 B.R. 172 (Bankr.N.D.Fla.1994). This general procedure is provided as an efficient and cost-effective means to arrive at the amount of adequate protection. However, if one or more of the parties believe that this method will not yield an accurate amount of depreciation in a particular case, the party or parties may litigate the issue.

■ As for the cases *sub judice,* the Court granted GMAC adequate protection in the form of liens on payments to the trustee to the extent of the monthly depreciation of it collateral, to be paid to GMAC upon dismissal or conversion. As discussed above, this was an incorrect application of the Bankruptcy Code and existing case law. Accordingly, GMAC will retain the adequate protection provided in the Court's earlier orders, with the further proviso that if the Court confirms these cases, the confirmation order will require the trustee to distribute the accrued adequate protection to GMAC upon confirmation.

## II. Valuation for Purposes of Adequate Protection

Integral to the determination of the adequate protection issue is the timing of valuation of collateral securing a claim. There are three distinct lines of cases regarding the timing of valuation, each promoting its own theory: (1) the date of filing theory, (2) the effective date of the plan theory, and (3) the multiple valuation theory. *In re Cason,* 190 B.R. at 924–25; *In re Kennedy,* 177 B.R. at

971. After carefully reviewing each of the theories, I adopt the multiple valuation approach.[2]

■ Having adopted the multiple valuation approach, I now discuss how it will be applied for purposes of determining adequate protection. The purpose of adequate protection payments is to compensate a secured creditor for any depreciation of its collateral between the time the creditor moves for relief from stay and confirmation. Thus, technically, the collateral should be valued at the date the secured creditor moves for relief from stay, or moves for adequate protection, and the date of confirmation. Opponents of the multiple valuation approach argue that valuing collateral more than once is costly and burdensome. *In re Cason,* 190 B.R. 917; *In re Kennedy,* 177 B.R. 967. However, this is not the case. Local Rule 408 requires chapter 13 debtors, upon the filing of schedules and statement of affairs, to notify all secured creditors in writing of the value, and the debtor's basis or justification for the values shown, of the collateral which secures their claim as set forth in the schedules.[3] L.R. 408. Since most motions for relief from stay are filed shortly after a petition if filed, it will be presumed that the valuation established pursuant to Local Rule 408 is in effect on the date relief from stay is requested.[4] The amount of adequate protection payments will be determined as discussed above. At confirmation, the filing date valuation, or relief from stay valuation if the filing date valuation proved inaccurate, will be reduced by the aggregate amount of adequate protection payments made to the secured creditor, and the remaining amount will be the value of the secured creditor's claim for confirmation purposes.

## III. Confirmation

■ Section 1325(a) provides that a plan can be confirmed over the objection of a secured creditor if:

2. Both the *Cason* and *Kennedy* decisions contain a comprehensive analysis of the different lines of cases. For the sake of judicial economy, such an analysis has not been replicated herein.

3. Local Rule 408 also provides that if the secured creditor disputes the amount of the debtor's valuation, it can file, within 20 days of the debtor's

notice, a motion to value collateral pursuant to Bankruptcy Rule 3012, and have the Court determine the valuation.

4. This will almost always be accurate. However, if a party disputes the accuracy of the L.R. 408 valuation at the time the motion for relief from stay is filed, it can litigate the issue.

(5) with respect to each allowed secured claim provided for by the plan

    (B)(i) the plan provides that the holder of such claim retains the lien securing such claim; and

    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . . and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a). Once a plan is confirmed, Section 1326(b) provides that administrative expenses must be paid before or at the time of each payment to creditors under the plan. The debtors' position is that if the technical requirements of Sections 1325(a)(5)(B) and (6) are met, then the plans should be confirmed and attorney's fees should be paid prior to any payments to creditors.

The issue that arises is what happens when a plan comes on for confirmation, but is insufficiently capitalized to pay attorney's fees in full upon confirmation and to begin paying secured creditors at least the amount of depreciation of collateral. Stated differently, does a secured creditor retain the lien securing its claim, for purposes of Section 1325(a)(5)(B)(i), if it will not receive any payments under the plan for a period of time after confirmation while its collateral continues to depreciate. The debtors' position appears to be that the secured creditor does retain its lien under 1325(a)(5)(B)(i) because under section 1325(a)(6), the Court must find that the debtors will be able to make all of the payments under the plan in order to confirm the plan. Thus, the debtors argue, the plan should be confirmed and attorney's should be paid in full before payments to creditors commence. This position is unpersuasive for the following reasons. Section 1325(a)(6) requires a court to find, by a mere preponderance of the evidence, that a debtor will be able to make all of the payments

called for under a plan. However, a preponderance of the evidence is a far cry from a guarantee of payment. Undoubtedly, the creditor, when it made the loan, determined by at least a preponderance of the evidence that the borrower was creditworthy. Look what happened! The purpose of security for a loan is to protect against the possibility that the creditor's initial evaluation of creditworthiness or the court's finding of an ability to pay were wrong. Thus, a court's finding, by a preponderance of the evidence, that a debtor will be able to make all payments called for under a plan is not sufficient to vitiate Fifth Amendment concerns regarding takings and just compensation.

Several courts have considered the risk that is placed upon secured creditors by plans which delay payments to secured creditors until all administrative expenses, including attorney's fees, are paid in full as a confirmation issue. *E.g. In re Parker,* 15 B.R. 980, 984 (Bankr.E.D.Tenn.1981) (stating that a court should consider, before or at the time of confirmation, the risk that if payments to secured creditors are delayed and the plan fails, the secured creditor will receive less than the amount of depreciation of its collateral), *aff'd,* 21 B.R. 692 (E.D.Tenn. 1982). Courts have generally confirmed plans where the secured creditors will begin receiving, upon confirmation, an amount at least equal to the amount of the depreciation of their collateral. *E.g. In re Methvin,* 11 B.R. 556, 558 (Bankr.S.D.Miss.1981), *aff'd,* 31 B.R. 569 (S.D.Miss.1982).

However, in cases where the plans provide no payments to secured creditors whose collateral is depreciating until attorney's fees are paid in full, courts have been less likely to confirm the plans. In *In re Johnson,* the court held that to be confirmed, a plan must deal fairly with secured creditors and provide them adequate protection not only as of the date of confirmation, but on an ongoing basis.[5] *In re Johnson,* 63 B.R. 550, 554 (Bankr. D.Col.1986) (denying confirmation where a secured creditor with a depreciating automo-

---

**5.** The *Johnson* court is not talking about Section 363(e), pre-confirmation adequate protection. Rather, the court is referring to its position that a secured creditor must be adequately protected,

post-confirmation, by payments at least equal to the amount of depreciation in order to protect the creditor from diminution in the value of its lien.

bile as collateral would not receive payments for 3½ years while administrative expenses are paid first); *see also In re Lum,* 1 B.R. 186, 187 (Bankr.E.D.Tenn.1979) (stating that a secured creditor can demand that a plan adequately protect it by requiring payments at least equal to monthly depreciation of its collateral). In *In re Shorb,* 101 B.R. 185, 187 (9th Cir. BAP 1989), the Ninth Circuit BAP ruled that the bankruptcy court abused its discretion in ordering attorney's fees to be paid six months after confirmation when the plan did not so provide. The dissenting judge stated that such an approach would obligate courts to deny confirmation of plans which provide that attorney's fees must be paid in full prior before payments to creditors who are becoming further unsecured by continued depreciation of its collateral. *Id.*

In the cases at hand, the issue of the payment of attorney's fees is intertwined with confirmation. As mentioned above, Section 1326(b) requires the payment of administrative expenses "[b]efore or at the time of each payment to creditors under the plan ..." Thus, the Bankruptcy Code does not require attorney's fees to be paid in full prior to payments to creditors, it simply requires that they be paid before or contemporaneously with payments to creditors. *In re Shorb,* 101 B.R. at 186.

Based on the foregoing, I have determined that as a rule, a plan can not be confirmed over objection unless it provides that, upon confirmation, each secured creditor will receive a payment at least equal to the amount of depreciation over the relevant time period. A plan which does not include such treatment does not provide that the secured creditor retains its lien pursuant to Section 1325(a)(5)(B)(i). If this cannot be accomplished while also allowing attorney's fees to be paid in full before commencement of payments to secured creditors, the debtor will be faced with a choice between paying attorney's fees over a longer period of time under the plan on the one hand, and dismissal or conversion on the other.

As for the cases *sub judice,* the trustee is ordered to file a report in each case detailing the amount of payments which have been paid thus far. In each case, if the payments to date are sufficient to pay GMAC its accrued adequate protection upon confirmation, pay all administrative expenses upon confirmation, and to immediately commence making payments to GMAC in an amount at least equal to the monthly depreciation which has previously been established, then the case shall be confirmed. If the above criteria are not met, then the debtor or debtors will be granted an opportunity to amend their plan(s) in the manner specified herein.

## IV. Policy Arguments

The debtors and the trustee have also argued that attorney's fees should be paid before any payments are made to secured creditors on policy grounds. Their basis of their argument is that it is Congress' intent to encourage the use of Chapter 13. This the court does not dispute. The debtors then state that the practical effect of requiring any payment to secured creditors before attorney's fees are paid in full is that fewer attorneys would be willing to receive their fees under debtors' plans, and thus, fewer chapter 13 cases would be filed.

The court in *In re Tenney* recognized this very argument while holding that attorney's fees should be paid before payments to creditors because "[d]elaying the payment of these expenses discourages rather than encourages the use of Chapter 13 relief." *In re Tenney,* 63 B.R. 110, 111 (Bankr.W.D.Okla. 1986). However, the court also recognized that "it may be unfair to force creditors to wait for their payments while their collateral continues to be used, and depreciated by debtors" and stated that the outcome of the case might have been different if the collateral was depreciating value. *Id.*

In these cases, it is undisputed that the automobiles are depreciating value. It is possible that the secured creditor could wait for several months before receiving any payments if attorneys' fees are to be paid in full before any payment to creditors. A court which faced similar facts has stated that:

> There is no reason that has been addressed to this Court to show why the attorneys who present thinly funded plans should not share in the risk of possible failure thereof and thereby be encouraged

to scrutinize all plans even more closely. Where plan payments are small and payment of fees out front will delay payments to creditors for many months, the sharing of risk and encouragement of more scrutiny will be served by spreading out payment of attorneys fees over time, at least over the early months of the plans while the debtor and creditors also get some benefit from monthly payments that apply partly to debts.

*In re Lanigan,* 101 B.R. 530, 533 (Bankr. N.D.Ill.1986).

Borrowing from the principles espoused in these two cases, secured creditors should not be required to fund debtors' plans and pay debtors' attorney's fees, in effect, with the depreciation of their collateral. If the risk of non-payment of the debtors' attorney's fees under a plan is too great to justify taking the case if the secured creditors must be adequately protected, then that should tell the attorney something about the case.

### V. Conclusion

The Chapter 13 plans presently before the court cannot be confirmed over the objections of GMAC, unless, at the time of confirmation, GMAC receives all accrued adequate protection payments received by the trustee prior to confirmation. Furthermore, after confirmation, distribution to GMAC in an amount at least as much as the monthly depreciation must commence immediately, regardless of whether or not the debtors' attorney's fees have been paid in full.

If the trustee has sufficient funds on hand to make payments to GMAC as required hereunder and to pay administrative expenses, including debtors' attorney's fees, then the plans may be confirmed. Otherwise, confirmation shall be denied.

Separate orders shall be entered in accordance herewith.