**In re Joan TOWNLEY and Herbert Townley, Debtors.**

**No. 97–31372 (SAS).**

United States Bankruptcy Court, D. New Jersey.

Dec. 20, 2000.

William H. Oliver, Jr., Asbury Park, New Jersey, for debtors.

John R. Morton, Jr., Moorestown, New Jersey, for Ford Motor Credit Company.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by debtors Joan and Herbert Townley to modify a chapter 13 plan after confirmation pursuant to 11 U.S.C. § 1329. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (K). The issue presented by this motion is whether a debtor may modify a confirmed chapter 13 plan under 11 U.S.C. § 1329 by surrendering the collateral at issue in full satisfaction of the amount due on the secured claim under the original plan if the value of the collateral is now less than that amount.

## FINDINGS OF FACT

Joan and Herbert Townley (hereinafter "the debtors") filed a petition for relief under chapter 13 of title 11, United States Code (the Bankruptcy Code) on February 11, 1997. The debtor's plan proposed a cramdown of a lien held by Ford Motor Credit Company (Ford) on a 1994 Toyota Tercel. The plan was confirmed by order of September 16, 1997. Because of a decrease in income, the debtors now seek to modify the plan pursuant to Bankruptcy Code section 1329 to surrender the car and to pay Ford nothing further on its secured claim. The court signed a consent order on September 27, 2000 granting relief from the automatic stay as to the car. Ford objects to debtors' motion to modify the plan, however, arguing that the debtors cannot modify the plan to reduce the total amount due to Ford under the original plan. Ford acknowledges, of course, that the debtors are entitled to a credit for the value of the car since it has been turned over to Ford.

## CONCLUSIONS OF LAW

Code section 1329 permits post-confirmation modification of a plan. Section 1329(a) states:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

There is a split in the case law as to whether Code section 1329(a)(1) permits the type of modification which the debtors propose here. Cases holding that such a modification is permitted include *In re Jock*, 95 B.R. 75 (Bankr.M.D.Tenn.1989), *In re Frost*, 123 B.R. 254 (S.D.Ohio 1990); *In re Day*, 247 B.R. 898 (Bankr.M.D.Ga. 2000); *In re Waller*, 224 B.R. 876 (Bankr. W.D.Tenn.1998); *In re Rimmer*, 143 B.R. 871 (Bankr.W.D.Tenn.1992); and *In re Stone*, 91 B.R. 423 (Bankr.N.D.Ohio 1988). Cases holding that such a modification is not permitted include *In re Nolan*, 232 F.3d 528 (6th Cir.2000); *In re Goos*, 253 B.R. 416 (Bankr.W.D.Mich.2000); *In re Cruz*, 253 B.R. 638 (Bankr.D.N.J.2000); *In re Meeks*, 237 B.R. 856 (Bankr.M.D.Fla. 1999); *In re Coleman*, 231 B.R. 397 (Bankr.S.D.Ga.1999); *In re Dunlap*, 215 B.R. 867 (Bankr.E.D.Ark.1997); and *In re Holt*, 136 B.R. 260 (Bankr.D.Idaho 1992).

■ This court believes that the *Jock* line of cases which construe Code section 1329(a)(1) to permit post-confirmation modification of secured claims is correct as a matter of statutory construction. The cases which hold otherwise essentially read an exception into section 1329(a)(1) which does not exist, i.e., that a modified plan may "reduce the amount of payments on claims of a particular class" *unless* the class consists of secured claims. Code section 1329(a)(1) is not limited by its terms to classes of unsecured claims. The Supreme Court has repeatedly held in bankruptcy cases that where the Bankruptcy Code is clear, its intent must be honored. *See e.g. Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 2133–34, 109 L.Ed.2d 588 (1990) (holding that criminal restitution ob-

ligations are dischargeable in chapter 13, because "Where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms") and *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 978, 140 L.Ed.2d 90 (1998) (holding that medical malpractice judgments will be dischargeable until Congress says otherwise).

■ One argument in the line of cases which deny post-confirmation modification to reduce payments to secured creditors is that under Code section 1327 the terms of the originally-confirmed plan bind all parties including the debtor. While that is obviously true, the binding effect of a plan is subject to the ability to modify the plan under Code section 1329. *Jock* correctly analyzes the relationship between sections 1327 and 1329 as follows:

Section 1327(a) is not a limit on permitted modification of a confirmed chapter 13 plan; rather, it is a statutory description of the effect of a confirmed plan or of a confirmed modified plan. A confirmed Chapter 13 plan binds the debtor (and all creditors), 11 U.S.C.S. § 1327(a), but a confirmed plan "may be modified ... at any time after confirmation of the plan but before the completion of payments under the plan...." 11 U.S.C.S. § 1329(a). The confirmed plan binds the debtor unless and until it is modified, and then the modified plan "becomes the plan," 11 U.S.C.S. § 1329(b)(2), and the modified plan has the effects described in § 1327. Sections 1322(a), (b), 1323(c) and 1325(a) are the appropriate sources of the limits on modification under § 1329. See 11 U.S.C.S. § 1329(b).

*In re Jock*, 95 B.R. at 76–77.

■ The most serious argument raised by the cases holding that post-confirmation plan modification cannot reduce payments on secured claims is that such a result would unfairly shift the risk of loss from depreciation of collateral to the secured creditor. The solution to that problem is

700

not, however, to read into Code section 1329(a)(1) an exception which the statute doesn't contain. The solution is for the secured creditor to object to confirmation of the original plan unless the timing and amount of payments is at least equal to the rate of depreciation. The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment. *In re Johnson*, 63 B.R. 550, 551 (Bankr.D.Colo.1986). Before the plan is confirmed, that property right is protected by the requirement of Code section 361 for adequate protection. At confirmation, that right is protected by Code section 1325(a)(5). The latter section can be read consistently with Code section 1329(a)(1), however, by requiring that payments under the original plan equal the rate of depreciation.

In *Johnson*, confirmation was denied because the rate of payment to a secured creditor under a chapter 13 plan would not have kept pace with the rate of depreciation of the collateral. *In re Johnson*, 63 B.R. at 554. "The creditor who bargains for a stream of payments through a chapter 13 plan that is not sufficient to protect the creditor from loss in value of its underlying collateral has failed to assert its rights at confirmation." *In re Jock*, 95 B.R. at 78. If default by the debtor on payments to the trustee under such plan would result in a failure to compensate a secured creditor for loss of value from depreciation, even one missed payment to the trustee should be cause for relief from the automatic stay to repossess the collateral. If a secured creditor asserts its rights in that manner under the original plan, a post-confirmation plan modification such as is proposed here will cause little or no harm to the secured creditor, since it will have received compensation under the original plan for the collateral's depreciation. Proceeding in that manner avoids the necessity to engraft a fictitious exception on to Code section 1329(a)(1).

The provisions of chapter 13 dealing with the order of payments under a plan do not prevent a secured creditor from insisting that the commencement and rate of payments it receives must equal the rate of collateral depreciation. Code section 1326(b) states that administrative expenses and trustee's commissions must be paid "before or at the time of each payment to creditors under the plan." That section does not specify, however, the proportion of each plan payment which must go to administrative expenses as opposed to creditors. Similarly, Code section 1322(b)(4) states that a plan *"may ...* provide for payments on any unsecured claim to be made concurrently with payments on any secured claim...." (emphasis added) Since that section is permissive, and not mandatory, it follows that a plan may also pay secured claims *before* unsecured claims.

 Ford also argues that the debtors must establish that the plan modification is due to an unanticipated change of circumstances. Code section 1329 contains no such requirement. Ms. Townley filed a supplemental certification, however, stating that she has lost her job. Ford further argues that the plan modification must be proposed in good faith. The debtors' loss of income meets that requirement.

██ Ford further argues that the debtors must establish that its collateral is in good condition. Code section 1329 contains no such requirement. In any case, the debtors respond that the car is in good condition.

For these reasons, Ford's objection is overruled and the debtors' motion to modify their plan is granted. The debtors shall file an order within seven days under D.N.J. LBR 9072–1(c).