**In re Lemoris BROWN, Debtor.**

**No. 04–10123–JDW.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Aug. 27, 2004.

Charles R. Hunt, Dawson, GA, for Debtor.

T. Lee Bishop, Jr., Albany, GA, for Albany Lincoln–Mercury, Inc.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Albany Lincoln–Mercury, Inc.'s objection to confirmation. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor, Lemoris Brown, filed a Chapter 13 petition on January 22, 2004. On the same date, Debtor filed a Chapter 13 plan that provided for payment in full of attorney fees of $950 prior to payment of secured creditors, including Albany Lincoln–Mercury, Inc. ("ALM"). ALM objected to confirmation because it would not begin receiving payments until 10 months after the case was filed. At a hearing on June 21, 2004, the Court refused to confirm the plan but gave Debtor time to modify the plan, with specific instructions that confirmation would be denied and the case dismissed if the modified plan did not provide for ALM to begin receiving payments at confirmation. The Court specifically noted that confirmation could not be obtained without modification of the plan proposal to pay attorney fees in full at confirmation. When asked what plan the Court would confirm, the Court declined to specify provisions it would approve, preferring to let Debtor and his attorney confer and propose a plan of their choosing, subject to the objection by ALM, if any. Although Debtor submitted an amended plan, this modification did not address the matter raised in the Court's instructions, and ALM renewed its objection.

### Conclusions of Law

■ Section 1325(a) of the Bankruptcy Code sets out the requirements for confirmation of a Chapter 13 plan as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C.A. § 1325(a) (West 1993).

Under Debtor's proposed plan, ALM would not begin receiving payments until 10 months after the bankruptcy filing. ALM is not the first creditor to express frustration in these circumstances and to object to confirmation. Typically, creditors have argued that, at a minimum, they should immediately begin receiving payments sufficient to offset any depreciation in the value of the collateral. In other words, they usually want adequate protection payments.

One of the earliest cases to address the issue had some of the most egregious facts. In *In re Johnson*, 63 B.R. 550 (Bankr.D.Colo.1986), the creditor, who was secured by a vehicle, was not due to receive any payments until 3½ years into the plan, by which time depreciation would have rendered the collateral worthless. *Id.* at 551. Although even the creditor conceded that the plan met all the literal requirements for confirmation, the court proceeded with a line of reasoning that distinguished the "quantitative" aspect (amount) of a secured claim from the "qualitative" aspect (assurance of payment) and insisted that both must be satisfied by the plan. *Id.* The court refused to confirm the plan because it failed to provide the creditor with adequate protection "not only as of the date of confirmation, but on an ongoing basis." *Id.* at 554.

The quantitative/qualitative distinction has not been well-received by other courts. The court in *In re Moses*, 293 B.R. 711 (Bankr.E.D.Mich.2003), stated that no authority exists to make such a distinction. *Id.* at 717. And, *In re Harris*, 304 B.R. 751 (Bankr.E.D.Mich.2004), asserted that the assurance of payment is subsumed in the feasibility requirement of § 1325(a)(6). *Id.* at 766. Congress set the standard for assurance of payment, and the court cannot require the debtor to conform to a greater standard. *Id.* at 766–67.

*In re Dews*, 191 B.R. 86 (Bankr.E.D.Va. 1995), was less dismissive of *Johnson*. The secured creditor in *Dews* faced an 8–month delay in payments, yet the court said the creditor was adequately protected by the plan, which provided for full payment of its claim with interest. *Id.* at 92. Furthermore, requiring adequate protection payments could render the plan impossible. *Id.* Nevertheless, the court said

that if, as in *Johnson,* the depreciation accompanying the delay in payments left the creditor "with collateral that has little or no value … a different result might follow." *Id.*

The court in *In re Cook,* 205 B.R. 437 (Bankr.N.D.Fla.1997) used different reasoning to deny confirmation in similar circumstances. As in *Johnson,* the Chapter 13 plan proposed a delay in payments to the auto creditor until the debtor's attorney fees had been paid in full, and the creditor argued that it was at least entitled to adequate protection payments to offset depreciation in the collateral. *Id.* at 438. The court agreed, stating that a plan that does not provide for payments "at least equal to the amount of depreciation over the relevant time period … does not provide that the secured creditor retains its lien pursuant to Section 1325(a)(5)(B)(I)." *Id.* at 443.

The court in *Moses* argued that the rule articulated in *Cook* has no application when the creditor's payment is only briefly delayed. 293 B.R. at 717. Nevertheless, it expressly left the door open for denying confirmation if the secured creditor is prejudiced by a significant delay in payments. *Id.* However, as the court in *Harris* pointed out, *Cook's* reasoning is not consistent with the plain language of the statute. 304 B.R. at 763.

> There is a difference between the value of a lien and the lien itself, just as there is a difference between the value of a motor vehicle and the vehicle itself. While the value of a lien varies with the value of the creditor's collateral, the existence of the lien itself does not.

*Id.* Furthermore, "when Congress intended to mean or refer to the *value* of a secured creditor's lien, it did so clearly and explicitly in the statute." *Id.* at 764 (citing 11 U.S.C. §§ 303(b)(1), 363(f)(3), 506(a), 361(2), 362(d)(3)(B), 1302(b)(2)(A)). Re-

quiring adequate protection payments to prevent a decline in the lien's value is adding a confirmation requirement not imposed by Congress. *Id.* at 765.

*Harris's* reasoning is similar to that in *In re Walters,* 203 B.R. 122 (Bankr.S.D.Ill. 1996), in which the court found that adequate protection has no place in a discussion of plan confirmation. *Id.* at 123–24. In that case, the creditor was to receive small payments from the outset of plan confirmation, which would increase in the 11th month of the plan. *Id.* at 123. Nevertheless the creditor argued that it was not adequately protected. *Id.* The court rejected the argument that adequate protection is "somehow 'inherent' in 11 U.S.C. § 1325." *Id.* at 124. "There is no requirement that a chapter 13 plan provide protection to the holder of an allowed secured claim against whatever diminution in value may result to the property securing the allowed secured claim in which the lien is retained." *Id.*

None of these cases squarely addressed whether a plan that delays payment to secured creditors in favor of the debtor's attorney satisfies § 1325(a)(6), commonly referred to as the feasibility requirement for confirmation. However, in discussing policy grounds for its decision, the court in *Cook* suggested that a feasibility argument could be made for denying confirmation.

> [S]ecured creditors should not be required to fund debtors' plans and pay debtors' attorney's fees, in effect, with the depreciation of their collateral. If the risk of non-payment of the debtors' attorney's fees under a plan is too great to justify taking the case if the secured creditors must be adequately protected, then that should tell the attorney something about the case.

205 B.R. at 444.

*Walters* is correct that adequate protection is not a stated requirement of

confirmation. However, a plan's compliance with subsection (a)(6) necessitates consideration of a secured creditor's prospects for stay relief. This Court routinely denies stay relief to automobile creditors prior to confirmation of Chapter 13 plans because considering such motions early in the case and requiring appropriate payments would hopelessly disrupt the administration of Chapter 13 cases. This delay in payment usually ends at confirmation, when the accumulated payments made by the debtor preconfirmation are disbursed to secured creditors. Courts like this one typically reason that the debtor's payments into the plan beginning one month after filing, as required by 11 U.S.C.A. § 1326(a)(1) (West Supp.2004), serve as informal adequate protection. In the Southern District of Georgia, in the event a case is dismissed prior to confirmation, accumulated payments are disbursed to secured creditors rather than returned to the debtor based on this rationale. *See General Motors Acceptance Corp. v. Coplin (In re Coplin),* No. 486–00886, 1987 WL 61929, at *1 (Bankr.S.D.Ga. Feb.3, 1987).

The Court routinely receives Chapter 13 bankruptcy cases proposing to pay filing fees in installments and attorney fees through the plan. The Code recognizes the financially distressed debtor's need to pay filing fees in installments as long as a debtor has not paid any fees to his or her attorney. *See* 28 U.S.C.A. § 1930(a) (West Supp.2004); Fed. R. Bankr.P. 1006(b). Consequently, such cases must propose to pay attorney fees following filing, usually through the plan from payments made to the trustee. The absence of such procedures would effectively and paradoxically bar debtors with limited means from receiving relief in this Court. However, the willingness of the Code to permit such cases to be filed does not amount to a corresponding mandate for confirmation if the other provisions of § 1325 are not satisfied.

A debtor with limited means may be unable to propose payment in an amount sufficient to pay attorney fees in full under the plan (as routinely proposed in this District), make separate installment payments for filing fees and, at the same time, to provide adequate protection to a creditor secured by depreciating collateral. The attorney fee priority may conflict with the necessity for adequate protection. The Court is mindful of the friction between these requirements and regularly approves plans that compromise both requirements by paying a portion of attorney fees at confirmation with the balance paid from future plan payments. Rather than create a rigid formula, the Court prefers to consider the question on a case-by-case basis in response to objection by secured creditors or the trustee. In order to avoid the harsh result incurred by Debtor in this case, the Court advised Debtor and his attorney a month earlier that his case would be dismissed if the disputed plan provision was not modified to provide for some compromise in the timing of payment of attorney's fees. Debtor refused to modify the plan as of the confirmation hearing the following month.

■ The Court is not omniscient, but § 1325(a)(6) requires the Court to be realistic about how this case is likely to unfold. If ALM were to seek stay relief post-confirmation in this case, the Court would likely be required to grant such relief. Even assuming ALM, unlike the creditors in the cases discussed above, has some equity cushion, Debtor will not be allowed to propose a plan that withholds payments to ALM for almost a year while Debtor continues to benefit from the use of ALM's depreciating collateral and when the accumulation of preconfirmation payments does not amount to enough to pay attorney

fees proposed for payment in full at confirmation. When one or more additional months of debtor payments are required to fully fund the attorney fees claim, the creditor secured by a depreciating asset such as the automobile in this case is likely to be irreparably harmed. If stay relief is granted, the chances of Debtor being able to make all payments under the plan are slim. Certainly, without reliable transportation, Debtor would more likely than not fail to complete his plan.

In accordance with the prior announcement and the reasoning stated in this opinion, the Court will grant ALM's objection to confirmation and dismiss this case. Any money paid into the case will, after payment of trustee fees, be distributed to secured creditors in proportion to the size of their secured claims.

An Order in accordance with this Opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, the Court hereby GRANTS Albany Lincoln–Mercury, Inc.'s objection to confirmation and further hereby DISMISSES this case.

The Chapter 13 Trustee is hereby ORDERED to disburse any funds remaining in the case after payment of trustee fees to creditors holding secured claims, allocating the distributions according to the proportion of each creditor's secured claim to the total amount of secured claims.