In re David L. HARRIS and, Dawn A. Harris, Debtors.

No. 03–42585.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Feb. 9, 2004.

Samuel Firebaugh, Westland, MI, for Debtors.

### OPINION CONFIRMING DEBTORS' CHAPTER 13 PLAN

THOMAS J. TUCKER, Bankruptcy Judge.

This case came before the Court on the objections filed by two secured creditors, Monroe County Community Credit Union ["Monroe"] and Ford Motor Credit Company ["Ford"] to confirmation of Debtors' proposed Chapter 13 plan. Monroe and Ford filed written objections to confirmation, and argued their objections at the confirmation hearing. At the request of Monroe and Ford, the Court allowed the parties to brief the objections. After the

parties filed their briefs, the Court directed Monroe and Ford to file supplemental briefs on a specified issue, and they did so, on October 14 and 15, 2003, respectively. Ford later withdrew its objections to confirmation, on December 18, 2003. For the reasons stated in this Opinion, the Court will overrule Monroe's objections and confirm Debtors' Plan.

## I. *Background.*

Debtors filed a voluntary petition for relief under Chapter 13 and a proposed Chapter 13 Plan. Debtors' Plan follows the Chapter 13 model plan used in the Eastern District of Michigan. Under the Plan, Debtors propose to make biweekly payments of $606.92 for 36 months. (Plan at 1 ¶¶ I.A.-B.) Consistent with Bankruptcy Code § 506(a),[1] the Plan divides the claims of Ford and Monroe each into a secured portion, and an unsecured portion, based on the value of each creditor's collateral. The Plan proposes a "cramdown" of Ford's $9,273.14 claim, secured by a 1998 Ford Windstar, to a secured claim of $6,800.00, and payment of this amount in full over the life of the Plan at an interest rate of 10% and a monthly payment rate of $219.42. The remainder of Ford's claim would be treated as a general unsecured claim. Similarly, the Plan proposes a "cramdown" of Monroe's $12,651.33 claim, secured by a 1995 Plymouth Acclaim, to a secured claim of $2,000.00, and payment of this amount in full over the life of the Plan at an interest rate of 10% and a monthly payment rate of $64.53. (*Id.* at 2 ¶ I.D.5.) The remainder of Monroe's claim would be treated as a general unsecured claim.

Consistent with this district's Chapter 13 model plan, Debtors' Plan specifies the order in which the Chapter 13 Trustee would make distributions to the various classes of creditors, after confirmation. The Plan provides that as funds become available, the Trustee's monthly distributions are to be made first to Class One claims, which are administrative expenses, and which are to be paid in full in advance of all other claims. Such administrative expenses include attorney fees of Debtors' counsel in the amount of $1,800.00, and the Chapter 13 Trustee's fees.

Next, the Plan proposes that Class Two, consisting of ongoing payments of $730.00 per month on the mortgage loan on Debtors' residence, be paid in advance of all remaining classes.

The next group of creditors in the order of payments proposed by Debtors' Plan is Class Five.[2] Class Five consists of the allowed secured claims of Ford and Monroe, which are to be paid in advance of all remaining classes, including general unsecured claims.

Given the amount that Debtors must pay to the Chapter 13 Trustee each month, the claim amounts in the various classes, and Debtors' proposed order of payments, Class Five claimants Ford and Monroe would not begin receiving monthly distributions from the Chapter 13 Trustee immediately after confirmation. Rather, Debtors concede, for the purpose of a decision on confirmation of Debtors' Plan, that Ford and Monroe would not receive any payments on their claims until six months after confirmation. (*See* Debtors' Response to Objections at 2.)

Both Ford and Monroe filed objections to Debtors' proposed Chapter 13 Plan, contesting the "cramdown" values ascribed

---

1. 11 U.S.C. § 506(a). Unless otherwise noted, all references in this opinion to "Code" sections are to sections of the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. In this case there are no claims falling within the model plan's Class Three (assumed executory contracts) or Class Four (pre-petition mortgage arrearages).

to their respective collateral and the interest rate to be applied to payment of their secured claims. These objections were resolved by agreement of the parties before the confirmation hearing.[3]

Ford and Monroe also objected to the post-confirmation delay in distributions to them. They attribute much of the delay in their distributions to the fact that Debtors' attorney fees would be paid in full, before any payments are made on their claims, rather than paid over time. In their objections, Ford and Monroe argued that because their collateral is depreciating, the delay in Plan payments to them leaves them without adequate protection of their security interests after confirmation. Because Ford's objections were withdrawn, this opinion will address only Monroe's objections.

## II. *Jurisdiction.*

This Court has subject matter jurisdiction over this bankruptcy case under 28 U.S.C. §§ 1334 and 157, and Local Rule 83.50(a) (E.D.Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

## III. *Monroe's objections to confirmation.*

■ Code § 1325(a) lists six numbered requirements for confirmation of a Chap-

ter 13 plan. Except as stated in § 1325(b), if all six of the § 1325(a) requirements are met, the Court must confirm the plan—*i.e.,* the Court has no discretion to deny confirmation—because § 1325(a) states that "the Court shall confirm" the plan. *See* discussion *infra.* Section 1325(b) provides an exception to the Court's mandatory duty to confirm under § 1325(a), by stating circumstances under which the Court "may not" confirm the plan. But § 1325(b) is not at issue in this case.[4]

The confirmation requirements of § 1325(a) relevant to the Court's discussion of Monroe's objections are these:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

. . .

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account

---

3. Debtors and Ford agreed that the "cramdown" value of the 1998 Ford Windstar will be $7,050, and that this amount will be amortized over the life of the Plan and paid at an interest rate of 10%. Debtors and Monroe agreed that the "cramdown" value of the 1995 Plymouth Acclaim will be $2,600 and that this amount will be amortized over the life of the Plan and paid at an interest rate of 12%. (Monroe's Br. in Supp. of Objection to Confirmation of Chapter 13 Plan at 1; Debtors' Resp. to Creditors Ford Motor Credit Company and Monroe County Community Credit Union's Objections to Confirmation of Debtors' Chapter 13 Plan at 2.)

4. Section 1325(b) permits certain objections by the Trustee or the holder of an allowed unsecured claim. There are no unresolved objections to confirmation under § 1325(b) by the Trustee or by any unsecured creditor. Monroe and Ford are both secured and unsecured creditors in this case, by virtue of the bifurcation of each of their claims into a secured component and an unsecured component under Code § 506(a). In their capacities as unsecured creditors, however, neither Monroe nor Ford made any objection to confirmation based on § 1325(b).

of such claim is not less than the allowed amount of such claim; or

    (C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a). Monroe has made objections under §§ 1325(a)(1) and 1325(a)(5). It has not objected under § 1325(a)(6), commonly referred to as the "feasibility" requirement. That is, Monroe does not contest Debtors' ability to make all payments under their Plan and to comply with their Plan.

In its post-hearing briefs, but not in its written objections to confirmation and not at the confirmation hearing, Monroe also made a constitutional argument, namely that confirmation of Debtors' Plan would be an unconstitutional "taking" of Monroe's property "for public use, without just compensation," in violation of the Fifth Amendment to the United States Constitution. U.S. Const. amend. V.

This opinion will first discuss the statutory objections to confirmation, and then discuss the constitutional objection.

## A.  *Monroe's statutory objections.*

### 1.  *Section 1325(a)(1).*

The first three objections to confirmation are based on § 1325(a)(1), which requires Debtors' Plan to comply with the provisions of Chapter 13 and with all other "applicable" provisions in the other chapters of the Bankruptcy Code. Monroe argues that Debtors' Plan violates § 1325(a)(1) for three reasons.

#### a.  *Section 1326(b)(1).*

▇ Monroe's first argument is that the Plan does not comply with § 1326(b)(1), which concerns payments to be made un-

der a confirmed plan, and which states in part that:

(b) Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(1) of this title; ...

11 U.S.C. § 1326(b)(1). Claims of the kind specified in § 507(a)(1), in turn, include "administrative expenses allowed under Section 503(b)...." 11 U.S.C. § 507(a)(1). The attorney fees of a debtor's counsel in a Chapter 13 case, to the extent they are approved, are such administrative expenses. As such, they are claims of the kind referred to in § 1326(b)(1). *See* 11 U.S.C. §§ 507(a)(1), 503(b)(2), 330(a)(4)(B); *In re Moses,* 293 B.R. 711, 718 (Bankr. E.D.Mich.2003); *In re Meadows,* 297 B.R. 671, 672 (Bankr.E.D.Mich.2003); 8 *Collier on Bankruptcy* ¶ 1326.03[1], at 1326–9 (Alan N. Resnick & Henry J. Sommer, ed., 15th ed. rev.2003).

Monroe argues that § 1326(b)(1) allows the payment of Debtors' attorney fees under the Plan be spread out in monthly installments over the life of the Plan, rather than paid first, in full, promptly after confirmation of the Plan. Monroe then goes further, and argues that § 1326(b)(1) actually *requires* such a delayed payment of Debtors' attorney fees. (Monroe's Br. in Supp. of Objection to Confirmation of Chapter 13 Plan at 1.) And this is required in this case, according to Monroe, to the extent necessary to enable the Trustee to make monthly payments to Monroe, beginning immediately after confirmation, that are at least equal to the monthly rate of depreciation of Monroe's collateral.

▇ Section 1326(b)(1) itself does not require any such depreciation-protection for Monroe's secured claim. Monroe must look elsewhere in the Code for such a requirement. And § 1326(b)(1) itself does

not *require* any delay in payment of Debtors' attorney fees. Rather, Monroe's argument is best viewed as simply urging that delaying the payment of Debtors' attorney fees is *allowed* by § 1326(b)(1), as a permissible method of causing distributions to Monroe to begin sooner. That is, while Monroe argues that § 1326(b)(1) *allows* a delay in payment of Debtors' attorney fees, in order to achieve greater depreciation-protection for Monroe's secured claim, that statute does not require it. As a result, Monroe's argument is not a valid objection to confirmation under § 1325(a)(1), because it is not a claim that Debtors' Plan violates § 1326(b)(1).

Moreover, the Court must reject Monroe's reading of § 1326(b)(1), because it is inconsistent with the language of the statute. Section 1326(b)(1) plainly means that at any given time after confirmation of a Chapter 13 plan, if there is any unpaid, allowed administrative expense, including any unpaid, allowed claim for attorney fees owing to a Debtor's attorney, no payment may be made to any other creditor under the plan *unless* the unpaid administrative expense is paid *in full,* either first or at the same time. Thus, for example, when the Chapter 13 Trustee makes her first monthly disbursement after confirmation, she may not disburse any payment to secured or unsecured creditors unless at the same time, the Trustee pays, *in full,* the unpaid, allowed attorney fees of Debtors' counsel.

An administrative claimant like Debtors' counsel, of course, may waive the benefit of § 1326(b)(1) by agreeing to delay payment of the administrative claim. *Cf.* 11 U.S.C. § 1322(a)(2)(Chapter 13 plan "shall" provide for full payment in deferred cash payments of all claims entitled to priority under § 507 "unless the holder of a particular claim agrees to a different treatment of such claim.") But there has been no such waiver in this case.

Monroe cites one bankruptcy court case in support of its reading of § 1326(b)(1), *In re Cook,* 205 B.R. 437, 443 (Bankr.N.D.Fla. 1997). The *Cook* case interpreted the statute to require only that the Chapter 13 Trustee pay *some part* of any unpaid administrative claim—full payment is not required—before or at the time the Trustee makes payments to other creditors. Other cases agree with this holding of *Cook. See, e.g., In re Parker,* 15 B.R. 980, 983 (Bankr. E.D.Tenn.1981), *aff'd.,* 21 B.R. 692 (E.D.Tenn.1982).

But this Court disagrees with such a reading of § 1326(b)(1). The statute does not say that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid—. . . *part of* any unpaid [administrative] claim . . . ." (emphasis added). As written, the statute requires payment of "any unpaid [administrative] claim," and that clearly means the full amount of each such claim.

■ A partial payment of an administrative expense claim would not satisfy § 1326(b)(1) because there would still remain an unpaid administrative claim. The "before or at the time of" language addresses the situation where at any given time there are funds available for distribution to other creditors after the full payment of the § 507(a)(1) claims. Such language permits the remaining funds to be paid immediately to creditors in other classes without their having to wait for the next monthly distribution under the plan. However, where there are insufficient funds to pay administrative claims in full, § 1326(b)(1) requires that claims in other classes await payment.

While there is a split of authority on this issue, the Court believes its interpretation of § 1326(b)(1) to be the better view, given the actual wording of the statute. And the

legislative history of § 1326(b)(1) supports this view. *See In re Shorb*, 101 B.R. 185, 186–87 (9th Cir. BAP 1989)(reviewing legislative history); *In re Tenney*, 63 B.R. 110, 111 (Bankr.W.D.Okla.1986); 8 *Collier on Bankruptcy* ¶ 1326.03[1], at 1326–8, 1326–9 (Alan N. Resnick & Henry J. Sommer, ed., 15th ed. rev.2003).

For these reasons, § 1326(b)(1) does not require or allow the full payment of Debtors' attorney fees to be delayed in favor of payments to a secured creditor, unless Debtor's counsel has agreed to such delay. Debtors' proposed Plan in this case, therefore, is consistent with § 1326(b)(1) in providing that Debtors' attorney fees be paid in full out of the first disbursements under the confirmed Plan.

### b. *Section 1322(a)(2).*

At the confirmation hearing but not in its post-hearing briefs, Monroe argued that the Plan violates § 1322(a)(2), so that confirmation must be denied under § 1325(a)(1). Section 1322(a)(2) states that:

(a) The plan shall—...

(2) provide for the full payment, in *deferred cash payments,* of all claims entitled to priority under § 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;

11 U.S.C. § 1322(a)(2)(emphasis added). Monroe argued that the emphasized language requires that Debtors' allowed attorney fees, which is one species of priority claim under § 507, *must* be paid on a delayed basis after confirmation, rather than paid in a lump sum from the first distributions made by the Trustee.

■ This argument is without merit. First, Monroe cited no authority to support its reading of § 1322(a)(2) during the confirmation hearing, and did not repeat, support, or cite any authority for this argument in its post-hearing briefs. Second, such a reading of § 1322(a)(2) would create a direct conflict with § 1326(b)(1), discussed above, with respect to administrative expenses.[5] Third, courts have interpreted § 1322(a)(2)'s reference to "deferred cash payments" to mean simply that § 507 priority claims, which must be paid in full, *may* be paid over time after confirmation of the plan, and need not be paid in full immediately after confirmation. The statute does not mean that of all § 507 priority claims *must* be paid over time—*i.e.,* that none may be paid immediately after confirmation. *See, e.g., In re Moses,* 293 B.R. 711, 713 (Bankr.E.D.Mich.2003)(citing *In re Parker, supra.*)

For these reasons, Debtors' Plan need not pay Debtors' attorney fees in monthly installments, but instead may pay them in full out of the first disbursements under the confirmed plan. Debtors' proposed Plan does not violate § 1322(a)(2).

### c. *Section 363(e).*

At the confirmation hearing, but not in its post-hearing briefs, Monroe argued that the proposed Plan does not satisfy § 1325(a)(1) because it does not comply with § 363(e). This is so, according to Monroe, because the Plan enables Debtors to use Monroe's collateral (the vehicle) after confirmation and during the life of the confirmed Plan without providing "adequate protection" of Monroe's security interest in the vehicle.

---

**5.** Administrative expenses, including debtors' attorney fees, are but one of several categories of priority claims under § 507. Section 1326(b)(1) applies to administrative expenses under § 507(a)(1), but not to other priority claims under § 507.

As noted above, § 1325(a)(1) requires that the Plan comply both with the provisions of Chapter 13 and with "the other applicable provisions" of the Bankruptcy Code. Section 363(e) is in Chapter 3 of the Code, rather than in Chapter 13, so implicit in Monroe's argument is the contention that § 363(e) and related adequate-protection provisions in § 361 are "other applicable provisions" of the Bankruptcy Code, within the meaning of § 1325(a)(1).[6]

Section 363(e) provides in pertinent part:

### § 363. Use, sale, or lease of property.

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).[7] Monroe argued that because Debtors propose to use Monroe's collateral after confirmation, § 363(e) requires the Court to condition Debtors' use of the vehicle "as is necessary to provide adequate protection" of Monroe's security interest.[8] Monroe argued that Debtors' Plan does not provide such adequate protection, because the Plan will not result in

monthly payments, beginning immediately after confirmation and continuing every month thereafter, that are at least equal to the vehicle's monthly depreciation.

The Court notes that while Monroe made this argument under § 363(e) at the confirmation hearing, it did not repeat the argument or attempt to support it in its post-hearing briefs. To the contrary, in its first post-hearing brief Monroe abandoned this argument, by acknowledging that "adequate protection" under § 363(e) is a requirement that applies only *before* confirmation. Citing the *Cook* case, *supra*, Monroe indicated in its brief that § 363(e) does not apply to confirmation of the Plan, or to Debtors' post-confirmation use of collateral.[9] (*See* Monroe's Br. In Supp. of Objection at 8.) Rather, Monroe argued, in order to be confirmed Debtors' Plan must provide Monroe with the *equivalent* of adequate protection, based on the "retain the lien" language of § 1325(a)(5)(B)(i). That argument is discussed in the next section of this opinion.

The Court therefore concludes that Monroe has abandoned the objection it made at the confirmation hearing, that the Plan violates § 1325(a)(1) because it does not comply with § 363(e).[10] As a result, in this case the Court expresses no view on the merits of the § 363(e) argument.

6. Section 103(a) may bear on this point. It provides in general terms that Chapter 3 of the Code, which includes § 363(e), applies "in a case under chapter ... 13." 11 U.S.C. § 103(a).

7. Section 361 states methods by which "adequate protection may be provided" when adequate protection is required under § 363. 11 U.S.C. § 361.

8. An unstated premise of Monroe's argument under § 363(e) is that § 363(e)'s reference to use of property by "the trustee," applies to a Chapter 13 debtor, presumably under 11 U.S.C. § 1303.

9. Other courts have held this as well. *See In re Moses,* 293 B.R. 711, 714–15 (Bankr. E.D.Mich.2003).

10. Similarly, before it withdrew its objections to confirmation, Ford made no argument based on § 363(e), and in fact disclaimed such an argument. (*See, e.g.,* Ford's post-hearing reply brief at 3, second bullet point, disclaiming any reliance on § 361, and stating that "Ford Credit's argument is based on the Fifth Amendment and § 1325(a)(5)(B).")

For all of the foregoing reasons, Monroe's three objections to confirmation under § 1325(a)(1) are overruled.

### 2. *Section 1325(a)(5).*

Monroe objects to confirmation on the ground that Debtors' Plan does not satisfy § 1325(a)(5)(B)(i). Section 1325(a)(5) states that:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder; . . .

11 U.S.C. § 1325(a)(5). Because Monroe has not accepted Debtors' Plan, and the Plan does not provide for Debtors to surrender the collateral to Monroe, the Debtors' Plan must meet the requirements of § 1325(a)(5)(B). Monroe indicated at the confirmation hearing that it has resolved with Debtors its previous objections with respect to subsection (ii). That is, the parties agree that under Debtor's plan, as modified by their agreement, "the value, as of the effective date of the plan, of property to be distributed" to Monroe "under the plan on account of" Monroe's secured claim "is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii).

■ Monroe argues, however, that under the proposed Plan it does not "retain the lien securing" its allowed secured claim, as required by subsection (B)(i). Monroe argues that it does not "retain" its lien in the vehicle under the Plan, because it will not actually receive payments under the Plan, each and every month after confirmation, in an amount that is at least equal to the vehicle's monthly depreciation. Monroe argues that to "retain the lien" in its collateral it must retain *the value* of its lien, which, in the case of a depreciating vehicle, means the creditor must receive compensation each month after confirmation for the decline in value of the vehicle.

Monroe relies primarily on *In re Cook*, 205 B.R. 437 (Bankr.N.D.Fla.1997), and *In re Johnson*, 63 B.R. 550 (Bankr.D.Colo. 1986) to support its position. In *Cook*, the court held that, for purposes of § 1325(a)(5)(B)(i), a secured creditor does not "retain the lien securing [its] claim" where the plan "is insufficiently capitalized to pay attorney's fees in full upon confirmation and to begin paying secured creditors at least the amount of depreciation of collateral." *Cook*, 205 B.R. at 442–43. The *Cook* court explained:

> [A]s a rule, a plan can not be confirmed over objection unless it provides that, upon confirmation, each secured creditor will receive a payment at least equal to the amount of depreciation over the relevant time period. A plan which does not include such treatment does not provide that the secured creditor retains its lien pursuant to Section 1325(a)(5)(B)(i). If this cannot be accomplished while also allowing attorney's fees to be paid in full before commencement of payments to secured creditors, the debtor will be faced with a choice between paying attorney's fees over a longer period of time under the plan on the one hand, and dismissal or conversion on the other.

*Id.* at 443.[11] The *Cook* court did not cite any authority supporting its interpretation of § 1325(a)(5)(B)(i)'s "retain the lien" language.

In *Johnson,* the court reached a similar result, but without clearly relying on any particular provision of the Bankruptcy Code. Indeed, the *Johnson* court appears to have acknowledged that § 1325(a)(5)(B) was *satisfied* in the case before it. 63 B.R. at 554. Without relying on the "retain the lien" language of § 1325(a)(5)(B)(i), the *Johnson* court held that "[i]n order for the [d]ebtor's plan to be confirmed, it must deal fairly with the [secured creditor's] claim and provide [the secured creditor] with 'adequate protection' of its interest in the collateral, not only as of the date of confirmation, but on an ongoing basis." *Id.*

In addition to the decisions in *Cook* and *Johnson,* the Court notes that Ford relied on a discussion of § 1325(a)(5)(B)(i) by Judge Keith M. Lundin in his Chapter 13 treatise, which arguably supports Monroe's position. On the one hand, Judge Lundin initially states that "[a] generic plan provision that secured claim holders 'retain liens' probably satisfies the lien retention requirement of § 1325(a)(5)(B)(i)." 2 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 104.2 at 104–3 (3d ed.2002). On the other hand, however, and citing the *Cook* and *Johnson* cases, Judge Lundin says:

Lien retention in § 1325(a)(5)(B)(i) has been interpreted to require that payments through the plan must at least equal depreciation in the value of collateral during the repayment period. Not to be confused with adequate protection before confirmation or with the payment of present value (interest) after confirmation, lien retention avoids constitutional problems only if periodic payments under the plan equal or exceed the value lost through depreciation and use of collateral by the debtor after confirmation. Put another way, even if the plan recites that secured claim holders retain liens, if the payments proposed by the plan are insufficient to stay ahead of depreciation, the retained liens will erode faster than the allowed secured claim is paid, contrary to the intent of § 1325(a)(5)(B)(i).

. . .

[L]ien retention is implicated when the order of payments to creditors under the plan delays or interrupts the payment of a secured claim such that the value of the collateral falls more quickly than the lienholder receives payments.

In these situations, the secured claim holder must object to confirmation and argue that the plan fails to retain its lien as required by § 1325(a)(5)(B)(i). The lienholder cannot wait until after confirmation to challenge a plan that erodes the protection of its lien—confirmation will bind the creditor to the treatment proposed by the plan. Lack of "adequate protection" arguments will be barred by confirmation, and if notice of the content of the plan was sufficient, even a lienholder's constitutional arguments will run squarely into the preclusive effect of confirmation.

*Id.* at 104–4 to 104–6 (footnotes omitted).

Debtors, on the other hand, argue that Monroe's interest in its collateral is adequately protected post-confirmation by:

proof of full coverage insurance; a required (and effective) Payment Order[;] a feasible Chapter 13 Plan according to the Model Worksheet which demonstrates that enough money is being paid

---

**11.** The Court notes that there is an additional choice available to the debtor under the scenario posited by *Cook*—surrender of the collateral. *See* 11 U.S.C. § 1325(a)(5)(C).

by the debtor(s) to satisfy the proposed treatment of creditors[;] the Debtors' demonstrated ability to make the payments with a review of the Debtors' payment history at the time of confirmation[;] and an Order Confirming Plan that required secured creditors are getting the present value of their collateral, not just that amount proposed by the debtors.

(Debtors' Resp. to Objections at 8.) Debtors argue further that "[a]bsent extreme circumstances, it is the totality of these factors upon [c]onfirmation that affords protection, and ... adequate protection to secured creditors generally, and to Ford and Monroe in this instant Chapter 13 case." *Id.*

Debtors rely primarily on *In re Walters*, 203 B.R. 122 (Bankr.C.D.Ill.1996), and *In re Dews*, 191 B.R. 86 (Bankr.E.D.Va.1995). In *Walters*, a secured creditor objected to confirmation of the debtor's five-year Chapter 13 Plan, which provided that the secured creditor would retain its lien on its collateral, but did not provide payments to the creditor in amounts necessary to cover the depreciation of its collateral for the first ten months after confirmation. 203 B.R. at 123. The secured creditor argued that the debtor's plan could not be confirmed because adequate protection is "inherent" in § 1325, and the proposed plan did not adequately protect its interest in its collateral. *Id.* The *Walters* court rejected this argument. In interpreting § 1325(a)(5)(B), which the court found was the only § 1325 provision relevant to the issue, the *Walters* court stated:

To satisfy the requirements of [§ 1325(a)(5)(B) ], debtor's plan need only provide that GMAC retain its lien and that GMAC be paid interest "over and above the face amount of the allowed secured claim at whatever interest rate is equivalent to the discount rate

selected by the court or agreed upon by the parties." There is no requirement that a chapter 13 plan provide protection to the holder of an allowed secured claim against whatever diminution in value may result to the property securing the allowed secured claim in which the lien is retained.

*Id.* at 124 (quoting from and relying on 5 *Collier on Bankruptcy* ¶ 1325.06[2], at 1325–49 (15th ed.1996) and citing *In re Dews*, 191 B.R. 86, 92 (Bankr.E.D.Va. 1995)). As the debtor's Chapter 13 plan provided that the secured creditor would retain its lien and that 9% interest would be paid on the secured creditor's claim, the *Walters* court overruled the secured creditor's objection and found that the requirements of § 1325 had been met. *Id.*

In *Dews*, a secured creditor objected to confirmation of the debtor's proposed Chapter 13 plan, where under the plan, the secured creditor would not receive any payments on its claim until about eight months after confirmation. 191 B.R. at 88. The issue raised by the delay in payments was "whether or not the debtors should be required to make adequate protection payments to Chrysler in order to compensate it for depreciation on the vehicle while it is waiting for distributions under the plan." *Id.* at 92. The *Dews* court found that the secured creditor "is adequately protected under the terms of the proposed plan, because its allowed secured claim will be paid in full, with interest" and thus the debtor was not required to make post-confirmation adequate protection payments. *Id.* The court found further that the secured creditor's "significant interest in being adequately protected ... is counterbalanced by the rehabilitative nature of Bankruptcy Code." *Id.* The court considered the likelihood that if the debtor was required to pay the secured creditor an amount that would cover the depreciation

of its collateral during the period before the creditor received plan distributions, a case under Chapter 13 may not be possible.[12]

As demonstrated by the cases cited by the parties, the courts are divided on the issue at hand. For example, the *Cook* case supports Monroe's "retain the lien" argument, while the *Walters* case rejects it. And the scholarly treatises also are divided on the issue. As noted above, Judge Lundin's treatise arguably supports Monroe's argument. On the other hand, *Collier on Bankruptcy* rejects the argument, pointing out that a secured creditor may "retain [its] lien" within the meaning of § 1325(a)(5)(B)(i) even though the collateral may depreciate after confirmation:

> Section 1325(a)(5)(B)(i) assures the holder of an allowed secured claim that its lien cannot be directly affected by a chapter 13 plan without its consent, although various indirect deleterious effects, resulting from depreciation, deterioration, damage, or loss may nonetheless occur during the extension period. But section 1325(a)(5)(B)(i) does not require that a chapter 13 plan guarantee protection to the holder of an allowed secured claim against whatever diminution in value may result to the property securing the allowed secured claim in which the lien is retained; it merely requires a provision in the plan for the *retention* of the lien.

8 *Collier* ¶ 1325.06[3][a], at 1325–31 (italics in original, footnote omitted).

The Court must reject Monroe's "retain the lien" argument, because it is contrary to the plain meaning of § 1325(a)(5)(B)(i). In effect, Monroe would have the Court interpret that section as if it stated that the holder of a secured claim must "retain *the value of* the lien securing such claim." But the statute does not say this—it merely says that the holder must "retain the lien securing such claim." To accept the creditors' argument is to add into § 1325(a)(5)(B) a requirement that Congress did not put there.

The plain meaning of the phrase "retain the lien," and the meaning intended by Congress, is that a secured creditor retain its lien in the collateral—in this case a motor vehicle—without regard to whether the collateral will retain its value. Retaining "the lien" in a motor vehicle under § 1325(a)(5)(B)(i) does not mean retaining the value of the lien.

There is a difference between the value of a lien and the lien itself, just as there is a difference between the value of a motor vehicle and the vehicle itself. While the value of a lien varies with the value of the creditor's collateral, the existence of the lien itself does not. A lien in a vehicle, for example, is a lien in that tangible piece of personal property—the physical thing—regardless of what that physical thing is worth at any given time. The Bankruptcy Code defines "lien" to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). This definition of the word "lien" in the Code does not refer to the value, or to any particular value, of the "charge against or interest in" the collateral. Similarly, Black's Law Dictionary defines a "lien" as

---

12. The *Dews* court distinguished the case before it, where there was only an eight-month delay in payments to the secured creditor, from the case facing the court in *Johnson*, where there was a proposed delay of three and one half years before the secured creditor would begin receiving payments under the plan, by which time the collateral securing the loan would have "little or no value." 191 B.R. at 92. The *Dews* court stated that in such a case, "a different result might follow." *Id.*

a "legal right or interest that a creditor has in another's property, lasting usu. until a debt or duty that it secures is satisfied." *Black's Law Dictionary* 933 (7th ed.1999). A creditor with a lien in a debtor's vehicle has the same *"legal* right or interest" in the vehicle—whether the vehicle is worth $10,000, $5,000 or only scrap value. The lien remains even as the value of that lien declines with vehicle depreciation.

It is apparent from several provisions in the Bankruptcy Code that when Congress intended to mean or refer to the *value* of a secured creditor's lien, it did so clearly and explicitly in the statute. This further confirms the distinction between the lien itself and the value of the lien. Following are several examples, the last of which occurs in Chapter 13 itself:

1. Code § 303(b)(1), which concerns who may file an involuntary bankruptcy petition, explicitly refers to the value of a lien when it refers to "the value of any lien on property of the debtor securing such claims . . . ."

2. Code § 363(f)(3), which concerns conditions under which a trustee may sell property free and clear of liens, explicitly refers to the value of liens on the property, in the phrase "the price at which such property is to be sold is greater than the aggregate value of all liens on such property."

3. Code § 506(a), which provides for the bifurcation of an undersecured creditor's claim into a secured claim and an unsecured claim, refers to the value of the secured creditor's lien by explicit use of the word "value." In § 506(a), the phrase Con-

gress used was "the value of such [secured] creditor's interest in the estate's interest in" the property.[13] The pertinent portion of § 506(a) is:

## § 506. Determination of secured status.

(a) An allowed claim of a creditor secured by *a lien on property* in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim *to the extent of the value of such creditor's interest in the estate's interest in such property,* or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (emphasis added).

4. Code § 361(2), which states one method of providing "adequate protection" when "adequate protection" is required by other provisions of the Code, *e.g.* § 363(e), lists one form of adequate protection to be "an additional or replacement lien" to the extent that there is a decrease in the *value of the secured creditor's lien.* Section 361(2) explicitly refers to the *value* of the lien, in the phrase "to the extent that such stay, use, sale, lease, or grant results in a decrease of the value of such entity's interest." (The phrase "the value of such entity's interest" means "the value of" the secured creditor's collateral; *i.e.,* the value of the lien. *See* discussion *supra* at n. 13.)

5. Code § 362(d)(3)(B), which establishes rules applicable to relief from

**13.** The Supreme Court has held that the phrase "value of such creditor's interest . . ." in § 506(a) means "the value of the collateral." *United Savings Association of Texas v.*

*Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

stay in single-asset real estate cases, explicitly refers to the value of a lien when it refers to the payment of "interest at a current fair market rate on the value of the creditor's interest in the real estate."

6. Code § 1302(b)(2)(A), which concerns the Chapter 13 trustee's duties, explicitly refers to the value of a lien, when it says that the trustee shall appear and be heard in a Chapter 13 case "at any hearing that concerns... the value of property subject to a lien." [14]

These Code provisions persuade the Court that when Congress intended to refer to the *value* of a lien in the Bankruptcy Code, it made the reference clear and explicit. If Congress had intended, in § 1325(a)(5)(B)(i), to require that a confirmed plan at all times preserve the *value* of a secured creditor's lien, Congress would have made this explicit by the use of words such as "retain the value of the lien." Congress did not intend "retain the lien" to mean "retain the value of the lien."

Thus, Monroe's interpretation of § 1325(a)(5)(B)(i) would import into that subsection a confirmation requirement that is not written there. And more generally, it would import into § 1325(a)(5)(B) a requirement regarding two subjects that Congress already has explicitly addressed in Chapter 13, but in a different way—the amount and timing of payments that must be made to a secured creditor under a confirmed plan. Congress could have required that payments to a secured creditor at all times equal or exceed the amount of any depreciation of the collateral. But in § 1325(a)(5)(B)(ii), Congress required only that the secured creditor receive distribu-

tions of property of a "value, as of the effective date of the plan," in at least the amount of the allowed secured claim (*i.e.,* the value of the collateral). Under § 1322(d), the plan may last for up to three years, or with the court's approval for cause, up to five years. Thus, in the case of a secured creditor like Monroe in this case, Congress explicitly required that the plan provide for distributions over a three-to-five year period to the secured creditor that are at least equal to the value of the vehicle as of the effective date of the plan. The inclusion of these specific, explicit requirements regarding the amount and timing of payments to secured creditors implies a Congressional intent to exclude additional, implicit requirements on that subject. This conclusion is reinforced by the fact that Congress also explicitly provided that if the requirements of § 1325(a) are met, including § 1325(a)(5), and the exception in § 1325(b) does not apply, the Court *must* ("shall") confirm the debtor's plan. *See* discussion *infra.*

As the Sixth Circuit has noted, in Chapter 13 Congress struck a careful balance between the competing interests of debtors and creditors:

> The goal of Chapter 13 is financial rehabilitation and a fresh start for the debtor. Chapter 13 attempts to balance the interests of debtors and creditors by allowing debtors with regular income to adjust their debts through extension and/or composition plans funded out of future income while retaining existing assets with creditors receiving payment over time from such future income, relief which is not available under a Chapter 7 liquidation.

---

14. In addition to these explicit references in the Code to the "value" of a lien, other provisions in the Code show that when Congress intended to refer to *value,* it made explicit reference to "value." One such example appears in Chapter 13 itself— § 1325(a)(5)(B)(ii) (reference to "the value ... of property to be distributed under the plan.")

*In re Burba,* 42 F.3d 1388, 1994 WL 709314, at * 17 (6th Cir. Nov.10, 1994)(unpublished) (citations omitted).

The cases that Monroe cites in support of its argument trace their roots back to *In re Johnson,* 63 B.R. 550 (Bankr.D.Colo. 1986), discussed *supra.* As noted above, the result in *Johnson* was not based on § 1325(a)(5)(B)(i)'s "retain the lien" provision. But *Johnson* warrants further discussion. In *Johnson,* the bankruptcy court reasoned that a secured claim has two aspects, both of which must be protected in order to confirm a Chapter 13 plan. The first, "quantitative" aspect, according to the *Johnson* court, is the *amount* of the allowed secured claim as determined under § 506(a), and is protected by the provisions of § 1325(a)(5)(B). 63 B.R. at 551, 554. The second aspect of the secured claim, *Johnson* says, is the "qualitative aspect," which "speaks to the relative degree of assurance that the debt will be paid, and it is equally as important to the creditor as the quantitative aspect." *Id.* at 551. And, according to *Johnson,* this qualitative aspect is part of the secured creditors' "vested property rights" protected by the Fifth Amendment. *Id.* According to *Johnson,* before the Court may confirm a Chapter 13 plan, the plan not only must meet the requirements of § 1325(a)(5)(B), thus protecting the quantitative aspects of the secured creditor's claim, but also must protect the "qualitative aspect" of the claim by protecting

against depreciation of the collateral during the operation of the plan. *Id.* at 554. The plan must do this, *Johnson* held, by providing "adequate protection" of the secured creditor's interest in the collateral "not only as the date of confirmation, but on an ongoing basis." *Id.*

The *Johnson* court did not clearly identify any particular provision of Chapter 13 or of the Bankruptcy Code that imposes this requirement. But Monroe argues that § 1325(a)(5)(B)(i)'s "retain the lien" language incorporates this requirement. Assuming for the sake of argument that *Johnson* is correct in finding that there is a "qualitative aspect" of a secured claim, Congress addressed that aspect of the secured creditor's claim, in § 1325(a)(6). As noted above, the "qualitative aspect" is defined by *Johnson* to be "the relative degree of assurance that the [secured] debt will be paid." Congress addressed this concern in § 1325(a)(6) when it imposed the confirmation requirement that "the debtor will be able to make all payments under the plan and to comply with the plan." This "feasibility" requirement is the way Congress chose to give a secured creditor, in the words of *Johnson,* a degree of "assurance that the debt will be paid" if the plan is confirmed. While the secured creditor in this case does not believe that this degree of assurance is enough, it is the degree of assurance that Congress chose to provide.[15] The type of

---

**15.** By its nature, a finding of "feasibility" under § 1325(a)(6) requires the bankruptcy court to make a prediction, and as the creditors correctly point out, that prediction is not infallible. One provision Congress provided that assists the bankruptcy court in making the feasibility prediction is the requirement that the Chapter 13 debtor commence making the payments proposed by the Chapter 13 plan no later than 30–45 days after the case is filed, *i.e.,* well before the confirmation hearing. *See* 11 U.S.C. § 1326(a)(1); 11 U.S.C. § 1307(c)(4)(court may dismiss or convert the

case for failure by the debtor to commence making timely payments under § 1326); Fed. R. Bankr.P. 3015(b)(the plan must be filed with the bankruptcy petition or within 15 days thereafter).

Nonetheless, the unfortunate reality is that some Chapter 13 debtors default under the terms of their confirmed plan, most commonly by failing to make all of the periodic payments required by the plan. Congress has provided remedies when such a default is material, however, including the dismissal of

*additional* assurance—against the risk of uncompensated depreciation—that Monroe seeks, is simply more than Congress provided in either § 1325(a)(6) or in the § 1325(a)(5)(B)(i) "retain the lien" provision.

■ As noted above, with an exception not applicable here, when a Debtor's plan meets all of the requirements of § 1325(a), that section requires the Court to confirm the plan. The Court has no discretion to impose any additional requirements for confirmation. *See Petro v. Mishler,* 276 F.3d 375, 378 (7th Cir.2002); *In re Estus,* 695 F.2d 311, 314 (8th Cir.1982); *In re Alexander,* 670 F.2d 885, 888, 889 (9th Cir.1982); 8 *Collier* ¶ 1325.01, at 1325–5. None of the § 1325(a) provisions relied on by Monroe in this case require or permit the Court to impose the type of depreciation-protection that Monroe seeks. If such protection is to be required for confirmation of a Chapter 13 plan, it must find its source in some other provision of the Code.[16]

For all of these reasons, Monroe's statutory objections to confirmation must be overruled.

### B. *Monroe's constitutional objection.*

#### 1. *Whether Monroe timely made its constitutional argument.*

■ Monroe argues that confirmation of Debtors' Plan would result in an un-

constitutional "taking" of Monroe's property for a public use and without just compensation, in violation of the Fifth Amendment.[17] Monroe did not make this constitutional argument either in its written objections filed before the confirmation hearing or at the confirmation hearing. Monroe's written objections did include a reference to Debtors' Plan failing "to provide Creditor due process." (*See* [Monroe's] Objection to Confirmation of Chapter 13 Plan, filed February 20, 2003, at ¶ 8.) This may be construed as either a procedural-due process or a substantive-due process objection, based in either case on the due process clause of the Fifth Amendment.[18] But it is not an objection based on the Fifth Amendment's "takings" clause. And Monroe abandoned its due process objection, by failing to raise it, explain it, or support it in any way at the confirmation hearing or in its post-hearing briefs.

■ Monroe first raised its Fifth Amendment "takings" clause objection in its post-hearing briefs. In an Order filed September 30, 2003, the Court questioned whether Monroe had properly raised and preserved its constitutional argument. The Court allowed Monroe to file a supplemental brief on that issue, and Monroe did so, on October 14, 2003.

The Court concludes that Monroe did not timely raise its constitutional objection to confirmation, but rather waived it.

the Chapter 13 case or conversion of the case to Chapter 7. 11 U.S.C. § 1307(c)(6). And as other judges of this Court have pointed out, a debtor's default under a confirmed plan may constitute "cause" for granting a secured creditor relief from stay. *E.g., In re Whitfield,* 290 B.R. 302, 305 (Bankr.E.D.Mich.2003).

16. As noted *supra,* the Court expresses no view on the merits of any argument based on the combination of § 1325(a)(1) and § 363(e), because Monroe abandoned any such argument.

17. The Fifth Amendment's "takings" clause provides "... nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

18. That portion of the Fifth Amendment provides that "[n]o person shall be... deprived of life, liberty, or property, without due process of law; ...." U.S. Const. amend. V.

Federal Bankruptcy Rule 3015(f) requires that "[a]n objection to confirmation of a plan shall be filed and served... before confirmation of the plan." Fed. R. Bankr.P. 3015(f). Local Rule 3015–3 contemplates that a creditor objecting to confirmation of a Chapter 13 plan must file and serve written objections to confirmation "within the time period designated by the clerk in the notice of the first meeting of creditors." L.B.R. 3015–3(a)(1)(E.D.M.). In this case, that deadline was March 31, 2003. (*See* Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines, filed February 10, 2003) (giving notice of the First Meeting of Creditors on March 10, 2003, and stating that "the deadline for filing objections to the confirmation of the plan is 21 days from the date of the first meeting.")

The Local Rule further provides that "[o]ne who fails to file and serve an objection to confirmation may be deemed to have consented to confirmation of the plan, and if the holder of a secured claim, may be deemed to have accepted the plan for purposes of Code § 1325(a)(5)(A)." L.B.R. 3015–3(a)(2)(E.D.M.). The Local Rule does, however, contemplate that the Court may permit a creditor to appear at the confirmation hearing and "for cause to lodge an untimely objection." L.B.R. 3015–3(b)(2)(E.D.M.).

The written objections to confirmation filed by Monroe were timely-filed under Local Rule 3015–3, but as noted above they did not include the Fifth Amendment "takings" clause argument. Under Local Rule 3015–3(b)(2), the Court would have had discretion, "for cause," to permit Monroe to raise its constitutional objection, if it had raised it for the first time at the confirmation hearing. But Monroe did not do so. At the conclusion of the confirmation hearing, the Court granted Monroe's request to brief the objections to confirmation that it *had* made. Monroe did not ask for leave to raise *additional* objections to confirmation in its post-hearing brief, nor did the Court grant such leave.

For these reasons, the Court concludes that Monroe did not timely raise, but rather waived, any its argument that confirmation would violate the Fifth Amendment "takings" clause. For this reason, the Court overrules that objection.

### 2. *The merits of the constitutional argument.*

■■■ There is a second, independent basis for overruling Monroe's untimely constitutional objection to confirmation. Even if the objection had been timely made, it would be foreclosed on the merits by a decision of the United States Court of Appeals for the Sixth Circuit, *In re Nolan*, 232 F.3d 528 (6th Cir.2000).

In *Nolan*, the bankruptcy court confirmed a Chapter 13 plan which bifurcated a secured claim of Chrysler Financial Corporation, into a secured claim in the amount of the value of the automobile in which Chrysler had a security interest, which was to be paid in full over the life of the plan, and an unsecured claim for the balance of Chrysler's claim, which would be paid on a "cents-on-the-dollar basis" under the plan. About a year after confirmation, the debtor proposed to modify the confirmed plan by surrendering her vehicle to Chrysler, and reclassifying the unpaid balance of Chrysler's secured claim as an unsecured claim. 232 F.3d at 529–30.

The Sixth Circuit agreed with Chrysler that such a post-confirmation reclassification of the secured creditor's claim is not permitted under § 1329 of the Bankruptcy Code, as interpreted in light of several other provisions in Chapter 13 of the Code. While it ruled in favor of Chrysler based on statutory provisions of Chapter 13, the Sixth Circuit also considered and rejected

Chrysler's constitutional argument—that the bankruptcy court's approval of the debtors' plan modification violated the Fifth Amendment due process and takings clauses. 232 F.3d at 534 n. 10.

 The Sixth Circuit's reasoning applies with equal force to Monroe's constitutional objection in this case:

> Chrysler also invokes the Fifth Amendment, which provides that "No person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V. The district court did not reach the Fifth Amendment argument. *Chrysler Fin. Corp. [v. Nolan]*, 234 B.R. [390] at 392 n. 2 [(M.D.Tenn.1999)]. We think Chrysler prevails for reasons related to congressional intent regarding process, policy, and finality, as reflected in the Code, not because of a constitutional limitation. Congress has explicit authority to allow and regulate bankruptcy. U.S. Const. Art. § 8, cl. 4. Every bankruptcy involves a "transfer" of private property from a creditor to a debtor, in the sense that a creditor is involuntarily deprived of a previously-vested, legally-enforceable debtor obligation to return borrowed creditor property. However, mere reconciliation of debts among private entities does not normally constitute taking private property *for public use.* A bankruptcy court does not instigate specific transfers of property with the objective of bestowing direct or indirect benefits on the public that are unrelated to bankruptcy policy. Our holding and judgment in this case should not be construed to rest upon any Fifth Amendment limitation of congressional authority.

*Id.* (italics in original).

For each of the reasons stated, the Court overrules Monroe's objection to confirmation to the extent it claims a violation of the Fifth Amendment.

### IV. *Conclusion.*

The Court will confirm the Debtors' proposed Plan, as modified to reflect the agreed resolution of Monroe's and Ford's objections regarding the value to be assigned to their collateral, and the interest rates to be used, under § 1325(a)(5)(B)(ii). The Court overrules Monroe's other objections to confirmation, for the reasons stated in this opinion. The Chapter 13 Trustee will prepare an appropriate confirmation order.