**In re PRECISION TOOL AND DIE MFG. CO. INC., a Pennsylvania Corporation, Debtor.**

**No. 00–11418.**

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 19, 2002.

■

David L. Hotchkiss, Meadville, PA, for Debtor.

Susan F. Reiter, Erie, PA, for First National Bank of Pennsylvania.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Precision Tool and Die Mfg. Co., Inc. ("Debtor") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on August 23, 2000 ("Filing Date"). Before the Court is the Application for Final Payment of Professional Fees and Expenses ("Application") filed on behalf of First National Bank of Pennsylvania ("Bank").

The Bank was previously allowed attorney's fees and costs in the amount of $5,601.50 and $184.64 for activities through June 1, 2001. It was at that time recognized that the award was not final and that other fees might be due. The Bank now seeks additional fees of $6,508 and $280.03 in costs. Debtor objects to the amount of the request, asserting that the amount is not reasonable and is inappropriate under the facts of the case.

### Factual Background

Debtor's bankruptcy schedules list assets of $1,352,368 and liabilities of $315,098 of which $84,332 is reflected as due to the Bank as the Debtor's sole secured creditor. On October 13, 2000, within two months of the Filing Date, Debtor was ordered to pay the Bank a lump sum of $3,500 and to pay $1,000 per month until further order of court which Debtor conscientiously honored. A short time later, on January 18, 2001, an order was entered which increased the monthly payment to the Bank to $3,500 per month. The Debtor paid $3,500 for January, 2001 and made regular payments of $3,500 each month thereafter.

In June, 2001, Debtor proposed a sale of substantially all of its assets for $900,000 and filed an accompanying Plan and Disclosure Statement which provided for the payment of *all* creditors in full.

The sale and plan of reorganization were each confirmed in July, 2001. On that same date, the Bank was awarded interim fees of $5,601.50 and expenses of $180.64. Due to environmental issues, the sale did not close and the plan was not consummated. Debtor continued to pay $3,500 to the Bank each and every month. By February, 2002, the total balance due the Bank did not exceed $33,720.89, including the

July, 2001 award of attorney's fees and expenses. The Bank remained secured by substantially all assets of the Debtor.

In this most unusual case, the Debtor had become unusually profitable. The Debtor's Monthly Operating Report for March 31, 2002 reflects a cash balance of $270,254. The Debtor operates as a Subchapter S Corporation, so that its earnings flow through and are taxed to the shareholder. Due to profits earned by the Debtor, the shareholder owed income tax on those profits. On March 29, 2002, Debtor filed a Motion to Approve Distribution to Debtor's Shareholder to Pay Tax Attributable to Undistributed Earnings ("Motion").

The Bank determined to oppose the Motion and incurred $3,285.50 in legal fees to do so. If Debtor had continued to pay $3,500 per month, the Bank would have been paid in full within a few months. Instead, the Bank mounted a vigorous opposition to the distribution and insisted that it be paid in full before any distribution was authorized. To resolve the issue, Debtor paid the Bank its full balance of $26,720.89 on April 15, 2002. After paying the Bank in full and after a distribution of $96,208 to the shareholder for the payment of tax liability, Debtor's April, 2002 Monthly Operating Report still reflects a cash balance of $127,545.[1]

### Discussion

■ An oversecured creditor may add "any reasonable fees, costs or charges" provided for in the loan documents. 11 U.S.C. § 506(b).

> ...11 U.S.C. § 506 directs this Court to fix only a fee for creditor's counsel which is "reasonable".... Therefore, a

---

1. Debtor has subsequently filed, and the Court has confirmed, an Amended Plan of Reorganization in which Debtor pays unse-

cured creditors 100% over time even if the business is not sold.

reasonable fee under these guidelines fixed by the court does not necessarily mean the fees charged between the attorney and his client. As between the attorney and client, the fee is a contractual matter between the two parties. Such fee may be subject to a variation where a reasonable standard is applied in cases where creditors' and debtors' funds in these estates are being disbursed to the payment of secured creditors' claims.

*In re Harman Supermarket, Inc.*, 44 B.R. 918, 920–21 (Bankr.W.D.Va.1984).

 The Bank's right to reimbursement for legal fees incurred does not mean that the Bank has a blank check to pay for needless litigation. The Bank cannot pursue unnecessary litigation in an abundance of caution and expect to be paid for its services from the bankruptcy estate.

 The Bank was at all times an oversecured creditor. The value of its collateral was many multiples of the amount of its claim. There was never any question as to the validity of the Bank's secured claim. The Bank had little, if any, risk of loss. Debtor operated profitably during the case. The Bank's claim was steadily reduced. Debtor diligently made regular monthly payments.

Under the unusual circumstances of this case, it was not reasonable for the Bank to expend $3,285.50 in legal fees to oppose the distribution to the shareholder to pay income taxes incurred as a result of Debtor's profitability. The Debtor was on course to pay the Bank in full in just a few short months with regular monthly payments which Debtor had paid like clockwork throughout the course of the case. The Bank's election to spend legal fees to oppose the distribution was an unwarranted expenditure that will not be approved by the Court.

The Bank's Application will be allowed in the reduced amount of $3,222.50 for attorney's fees and $280.03 for expenses.

It is recognized that counsel must use diligence in protecting the client's interest. Larger claims impose on counsel a greater risk of loss. Time spent may be an important factor, but also the amount involved and the results accomplished are important. Here, there is very little that could have gone wrong. The criterion is the market rate. The question here is not how much can be successfully imposed on the debtor-obligor; the question is how much the market warrants if the client were paying the fees out of its own pocket.

In sum, a total fee of $8,824 for collection of an $84,000 fully secured claim is adequate compensation.