**In re Gordon McKENNA/Joy Carson, Debtor.**

**No. 05–75754.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 26, 2006.

Raymond L. Beebe, Raymond L. Beebe Co LPA, Toledo, OH, Joy L. Carson, Perrysburg, OH, for Debtors.

Anthony B. Disalle, Toledo, OH, for trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came before the Court after an Evidentiary Hearing on the Debtors' Objection to Claim Number 20 filed by Huntington National Bank. In the time leading up to the Hearing, the Parties submitted multiple briefs in support of their respective positions. The Court has now had the opportunity to fully review these briefs in light of the arguments made by Parties' counsel at the Hearing held in this matter. Based upon this review, the Court, for the reasons that will now be explained, finds that the Debtors' Objection should be Sustained in Part.

The substance of the Debtors' Objection to the Claim of Huntington National Bank (hereinafter referred to as the "Creditor") is limited to one issue: the amount of fees and costs, both prepetition and postpetition, the Creditor is entitled to include on its claim against the Debtors' bankruptcy estate. The underlying facts giving rise to this issue are not materially in dispute.

## FACTS

On October 15, 2005, the Debtors, Gordon D. McKenna and Joy L. Carson (hereinafter "Debtors"), filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. Prior to the time they petitioned this Court for relief, the Debtors had entered into a commercial-loan agreement with the Creditor, Huntington National Bank. The principal amount of the loan was $350,000.00; in addition to being secured against the commercial property constituting the subject of the loan, the loan was secured as a second mortgage against the Debtors' residence.

Because of a later default, the Creditor initiated legal proceedings to foreclose on the Debtors' residence; but with the commencement of the Debtors' bankruptcy case, the foreclosure action was stayed. After the commencement of their case, the Creditor filed a proof of claim in the amount of $345,704.24. Later, the Creditor amended its claim so as to reflect a reduction in principal stemming from the sale of the commercial property.

The Creditor's amended claim, number 20, set forth a balance owing of $33,413.58. Later, as the result of a partial settlement between the Parties, this amount was reduced to $16,450.00, representing solely the legal fees and costs associated with the Creditor protecting its mortgage interest in the Debtors' property. (Doc. No. 132, at pg. 2). Of this amount, $8,140.20 represented prepetition fees and costs; $8,309.80 constituted postpetition fees and costs. (Doc. No. 133, at pg. 2). These fees were imposed under the terms of the loan agreement entered into between the Parties.

## DISCUSSION

Before this Court is the Debtors' objection to the proof of claim filed by the Creditor. Determinations concerning the allowance or disallowance of claims against the estate are core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2)(B).

Bankruptcy Code § 502(a) provides that the Creditor's claim, as represented by its amended proof of claim, is deemed allowed unless an objection is filed. If, as here, an objection is filed, § 502(b) then directs this Court to undertake a two-step analysis: (1) "determine the amount of such claim" and then (2) "allow such claim in such amount, except to the extent that" any of the conditions subsequently set forth in

the provision are present. But this only forms a part of the equation.

The fact that a claim may be allowed under § 502(b) goes only so far as its allowance as an unsecured claim. In this matter, however, the Creditor seeks to have its legal fees and costs, both prepetition and postpetition, included as a part of its secured claim. As authority for this position, the Creditor relies solely on § 506(b), which provides relevant part:[1]

> To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The function of this provision is straightforward; it affords an oversecured creditor the right to recover its reasonable legal fees and costs out of the surplus value of the property securing its claim.

■ In this matter, the Parties do not dispute the Creditor's status as an oversecured creditor. But insofar as it concerns the Creditor's prepetition fees and costs, its reliance on § 506(b) would appear to be misplaced. Although there exists authority to the contrary, courts have generally held that § 506(b) is limited in its applicability to postpetition fees and charges. (For a complete discussion *see In re Leatherland Corp.*, 302 B.R. 250 (Bankr. N.D.Ohio 2003) (J. Whipple)). This would appear to be the better view; section 506(b), by referring to reasonable fees, costs, or charges which may be added to an "allowed secured claim," is structured so as to be forward looking in time. *In re*

*900 Corp.*, 327 B.R. 585, 593 (Bankr. N.D.Tex.2005).

But this also means that the converse is true; any fees, costs and charges arising prepetition are simply part of the secured creditor's claim in the first instance, being governed by § 502(b), not § 506(b). *In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 131 (Bankr.E.D.N.Y.2002). As explained in a commonly used treatise on bankruptcy:

> The amount of a creditor's 'claim' is typically determined as of the petition date, and includes the principal amount of the obligation plus all matured pre petition interest, fees, costs and charges owing as of the petition date. The allowability of these prepetition amounts as part of the secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code.

4 Collier on Bankruptcy, ¶ 506.04[1] at 506–101, 506–102 (15th ed. rev.2002). Resultantly, the prepetition fees sought by the Creditor will be discussed in the context of § 502 while its request for postpetition fees will be discussed in the context of § 506(b).

Among the reasons a claim may be disallowed under § 502(b) is that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law ...." 11 U.S.C. § 502(b)(1). The Debtors' position with regards to the allowability of the Creditor's prepetition fees focuses entirely on this ground, and the unenforceability of the Creditor's claim by virtue of applicable law, that is Ohio law. As taken from their brief to the Court: "The Debtors in the

---

1. This provision was slightly modified by the BAPCPA, effective October 17, 2005, with the phrase "or State statute" added just after the word "agreement." This modification, however, was not in effect when the Debtors filed

their bankruptcy case just two days prior, October 15, 2005. Regardless, this modification would not effect this Court's analysis in this particular matter.

instant case concedes [sic] that the mortgage allows for the fees but ... believe that the provision allowing for fees is void under Ohio law." (Doc. No. 133, at pg. 2).

■ Ohio has adopted what is known as the "American Rule," whereby in litigation each party is responsible for their own attorney fees and costs. *Sorin v. Bd. of Edn.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). An exception is made when, as here, the Parties' agreement provides otherwise. *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987). Notwithstanding, since the year 1911, it has been the law in Ohio that agreements set forth in promissory notes for the payment of legal fees and costs upon default are contrary to public policy and hence void. *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 at syllabus (1911). The reasoning: unequal bargaining power. Over time, however, there has been some weakening of this Rule, especially when its purposes would not be served. *First Capital Corp. v. G & J Industries, Inc.*, 131 Ohio App.3d 106, 111, 721 N.E.2d 1084 (1999).

■ Relevant here, the Rule in *Miller v. Kyle* was partially abrogated by statute through O.R.C. § 1301.21, wherein it is provided:

> (B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.

As it concerns the Creditor's right to assess prepetition fees and costs against the Debtors, there is no reason to conclude that this provision is not applicable to the Parties' transaction. First, for purposes of § 1301.21, the introductory term "contract of indebtedness" is defined to encompass any "mortgage" so long as the indebtedness was not "incurred for purposes that are primarily personal, family, or household." In this matter, the mortgage given by the Debtors was for a business endeavor; the fact that the mortgage was also secured against the Debtors' residence does not change its underlying character. Additionally, the indebtedness involved, $350,000.00, is well over the $100,000.00 threshold set forth in paragraph (C) of this provision.

Yet, even though O.R.C. § 1301.21 permits the Creditor to assess legal fees and costs, the statute contains a quantitative limitation in paragraph (D): the fees assessed must be reasonable. And with respect to those prepetition legal fees sought by the Creditor, a fair reading of the Debtors' arguments shows that their primary point of contention centers on this limitation. Specifically, the Debtors contest the reasonableness of the $2,458.00 charge the Creditor assessed in obtaining its cognovit judgment, a position which is anything but specious: a primary function of a cognovit note is to reduce a creditor's expense in the event of default. *Fogg v. Friesner*, 55 Ohio App.3d 139, 140, 562 N.E.2d 937, 938 (1988).

■ Nevertheless, in determining what quantitatively constitutes a "reasonable amount" of fees under § 1301.21, paragraph (D) places the burden upon the debtor to show that the creditor's fees are improper, providing as follows:

> In determining the amount of attorneys' fees that is reasonable, all relevant factors shall be considered, including but not limited to, the nature of the services rendered, the time expended in rendering the services, the amount of money and the value of the property affected,

and the professional skill and expertise of the attorney or attorneys rendering the services. Unless a court has been requested to make a determination of the amount of attorneys' fees that is reasonable and finds to the contrary by a preponderance of the evidence, the following are deemed reasonable amounts:

> (2) If the commitment to pay attorneys' fees is not based upon a specific percentage of the total principal, interest, and other charges owed on the contract of indebtedness, an amount equal to the attorneys' fees customarily charged by the attorney or attorneys rendering the services.

In more detail, this provision requires that the Debtors establish, by at least a preponderance of the evidence, that the prepetition fees assessed by the attorneys rendering the legal services for the Creditor are in excess of those "customarily charged"; otherwise, such fees must be deemed to be reasonable. But for this purpose, merely pointing the Court to an anomalous fee is not sufficient. Section 1301.21(D)(2) takes a subjective view, requiring that a debtor show why the particular fee is not "customarily charged by the attorney or attorneys rendering the services."

For the Debtors, the record in this case simply does not go this far. Importantly, no exemplars from other cases in which Creditor's legal counsel performed similar services were presented. Consequently, while the Court appreciates the Debtors' argument, Ohio law instructs this Court to allow all the prepetition fees, including those related to the cognovit judgment assessed by the Creditor. The same, however, is not entirely true as it applies to the postpetition legal fees sought by the Creditor.

■ Section 506(b), discussed *supra*, governs the permissibility of the postpetition legal fees and costs sought by the Creditor. The requirements of this section are: (1) the Creditor be the holder of a secured claim, (2) the secured claim be oversecured, (3) the agreement between the Parties must have provided for the fees, and (4) the fees sought must be reasonable. Again here, a fair reading of the Debtors' objection to the postpetition legal fees and costs assessed by the Creditor shows that only the fourth element is in controversy, the reasonableness of the fees and costs.

■ Unlike with the prepetition fees assessed by the Creditor, where state law controls, whether legal fees are reasonable under § 506(b) is a matter of federal law. *Ryker v. Current*, 338 B.R. 642, 649–50 (D.N.J.2006). But with regards to the reasonableness of the postpetition fees sought by the Creditor, the position taken by the Debtors adds an extra layer; in their arguments before the Court, the Debtors set forth that the Creditor's "request for allowance of fees under the code framework must also entail an examination of the applicability of Section 1322(e)." (Doc. No. 133, at pg. 4). This section provides:[2]

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

In *Atwood v. Chase Manhattan Mortgage Co. (In re Atwood)*, the court explained this section's interaction with § 506(b):

> Although § 1322(e) appears to trump § 506(b), both sections potentially pertain when a secured creditor files a

---

**2.** Although § 1322 was extensively amended by BAPCPA, paragraph (e) was left unaltered.

proof of claim, because it will not always be apparent that the debtor's chapter 13 plan will cure the default, and the case may be converted to or from chapter 7. The Code does not establish specific procedures for determining § 506(b) claims and § 1322 cure amounts.

293 B.R. 227, 231 (9th Cir.BAP2003). The significance of this unsettled relationship centers on whether the reference in § 1322(e) to "the underlying agreement and applicable nonbankruptcy law" trumps § 506(a)'s allowance of fees and costs so long as reasonable under federal law. Stated differently, if, under § 1322(e), an agreement or nonbankruptcy law does not allow for the assessment of legal fees and costs, can they be assessed anyway under § 506(b). *In re Evans,* 336 B.R. 749, 753 (Bankr.S.D.Ohio 2006). However, at this particular juncture, this tension between the two provisions is more academic than substantive.

As just discussed, applicable nonbankruptcy law, O.R.C. § 1301.21, allows the Creditor to assess legal fees and costs. Once more, like § 506(b), Ohio law imposes a reasonableness requirement on the assessed fees and costs. And what is reasonable in one jurisdiction will generally be reasonable in another. Ergo, applying federal, as opposed to Ohio law as the Debtors seek to have done, is not likely to cause any prejudice; to the contrary, it is likely beneficial to them as federal law, unlike Ohio law, does not place the onus on the Debtors to show that the legal fees and costs are not reasonable, *supra.*

 For purposes of federal bankruptcy law, Chapter 13 seeks to strike a careful balance between the competing interests of debtors and creditors. *In re Harris,* 304 B.R. 751, 765 (Bankr. E.D.Mich.2004). It follows then that, to the extent it involves estate assets in a Chapter 13, determining the reasonableness of a secured creditor's postpetition

legal fees requires balancing two competing concerns: the right of the creditor to protect its property interest, against the right of a debtor to formulate a plan of reorganization. But because a claim made under § 506(b) involves, by definition, an oversecured creditor—whose claim is, by its very nature, protected—the right of reimbursement under § 506(b) is not a blank check. Rather, only those fees which appear necessary at the time will be allowed. *In re Precision Tool and Die Mfg. Co., Inc.,* 285 B.R. 621, 624 (Bankr. W.D.Pa.2002).

By way of example, legal fees incurred because of questions over matters such as collateral valuation and plan feasibility are likely to be viewed as necessary—the former going directly to the issue of whether the creditor is oversecured; the latter going to the ultimate aim of a Chapter 13 bankruptcy, plan confirmation. *In re Cushard,* 235 B.R. 902, 908 (Bankr. W.D.Mo.1999). The same would also be true with regards to motions for relief from stay where the debtor is not making payments on the collateral and/or when the collateral is likely to significantly depreciate in value. *In re Schriock Constr.,Inc.,* 210 B.R. 348, 349 (Bankr. D.N.D.1997). The postpetition legal fees and cost assessed by the Creditor, however, do not fit this mold.

Nothing in this case would indicate that the Creditor's interest in its collateral, being real property, was in danger of a precipitous decline in value. Similarly, and although all of the exact details surrounding the Parties' relationship are not known, it is presumed that the Debtors' property was insured and, that once filing for bankruptcy, the Debtors began making regular payments on their debt obligation. Also of importance: upon filing for bankruptcy relief, the Debtors' proposed to and did, in

fact, effectuate in relatively short order a sale of the Creditor's collateral.

Creditors, while understandably not pleased with the burdens imposed by bankruptcy, are expected to give an honest debtor seeking to reorganize their financial affairs the chance to get back on their feet. This does not mean that a creditor is not entitled to be reimbursed for legal costs incurred to properly monitor the case, with such charges generally allowed as a matter of course. *Accord In re Cushard,* 235 B.R. at 909. But when a creditor's interest is not in seriously jeopardy, restraint should be exercised, especially during the initial stages of the case. *Id.* But here, just the opposite occurred.

Approximately one month after the Debtors sought the protections of this Court, and just one week after they filed their plan of reorganization, wherein they set forth their proposal to sell the commercial property, the Creditor filed a Motion for Relief from Stay to recover its collateral. (Doc. Nos., 1, 10 & 11). In this way, the Court agrees with this assessment made by Debtors' counsel:

> The case at bar was not complex in its form or substances as evidenced by it [sic] short duration and the relative paucity of need for this courts [sic] involvement. The debtors proposed to sell an asset, and from the proceeds and their personal resources, to pay the debts in full. The task was accomplished to the benefit of all concerned in short order.... it seems quite disparate that a Debtors counsels [sic] efforts in preparing filing and obtaining confirmation of a Chapter 13 plan should amount to a factor of approximately one tenth of the fees proposed by the creditors [sic] counsel as reasonable compensation.

(Doc. No. 133, at pg. 4).

Accordingly, for all these reasons, but with the exception of that time as was necessary to properly monitor the progres-

sion of the Debtors' case, all the postpetition legal fees assessed by Creditor's counsel must be disallowed, including those fees related to the filing of the Motion for Relief from Stay, as well as to those charges related to researching the issue of cram down, which never arose as an issue. However, since the record in this case does not allow a determination of this number with absolute certainty, the Court will set this figure at $1,220.00, an amount which, given the complexity of this case, appears reasonable. This amount is computed based upon a combination of these two figures: Creditor's legal counsel billing for 3 hours work at $280.00 per hour; and 4 hours of paralegal work at $95.00 per hour.

In summation, the Creditor, as sought, shall be permitted a prepetition secured clam against the Debtors' bankruptcy estate in the amount of $8,140.20 pursuant to 11 U.S.C. § 502. However, the $8,309.80 in legal fees, sought by the Creditor as an allowed postpetition secured claim under 11 U.S.C. § 506(b), shall be limited to $1,220.00. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, in accordance with 11 U.S.C. §§ 502 & 506, the Objection of the Debtors, Gordon McKenna and Joy Carson, to Claim Number 20 filed by Huntington National Bank, be, and is hereby, SUSTAINED IN PART.

**IT IS FURTHER ORDERED** that, consistent with this Decision, the Creditor, Huntington National Bank, is hereby afforded 21 days, commencing from the entry of this order, to amend its Claim Number 20.